1  K. ERIK FRIESS (BAR NO. 149721)
   LUCAS A. URGOITI (BAR NO. 333452)
2  ALLEN MATKINS LECK GAMBLE
     MALLORY & NATSIS LLP
3  2010 Main Street, 8th Floor
   Irvine, California 92614-7214
4  Phone:  (949) 553-1313
   Fax:  (949) 553-8354
5  E-Mail:  rfriess@allenmatkins.com
            lurgoiti@allenmatkins.com
6
   Attorneys for Petitioner and Plaintiff
7  SUN LAKES HIGHLAND, LLC

8                UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 SUN LAKES HIGHLAND, LLC, a          Case No. 5:24-cv-02603-DTB
   Delaware limited liability company,
12                                      **VERIFIED FIRST AMENDED
                 Petitioner and Plaintiff,   PETITION FOR WRIT OF
13                                      MANDATE FOR:**
         vs.
14                                      **(1) VIOLATIONS OF RIGHTS TO
   CITY OF BANNING, a municipal         PROCEDURAL DUE PROCESS AND
15 corporation; and DOES 1 through 10,  FAIR HEARING**
   inclusive,
16                                      **(2) VIOLATIONS OF
                 Respondents and        GOVERNMENT CODE, SECTION
17               Defendants.            65300 ET SEQ; BANNING
                                        MUNICIPAL CODE, SECTIONS
18                                      17.04.030; 17.48.020; 17.56.050;
                                        17.96.060**
19
                                        **AND COMPLAINT FOR:**
20
                                        **(1) VIOLATIONS OF THE CIVIL
21                                      RIGHTS ACT, 42 U.S.C. SECTION
                                        1983 (DENIAL OF PROCEDURAL
22                                      DUE PROCESS UNDER THE
                                        FOURTEENTH AMENDMENT);
23                                      AND**

24                                      **(2) DECLARATORY RELIEF**

25                                      **DEMAND FOR JURY TRIAL**

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

391960.00003/4891-8160-4075.4

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................4

THE PARTIES ....................................................................................................7

JURISDICTION AND VENUE ...........................................................................8

GENERAL ALLEGATIONS ...............................................................................8

Since the early 1980's, the City has tried and tried to promote development on the Banning Point Property .....................................8

Throughout the mid-2010's, the City's electoral system granted residents of the Sun Lakes community overwhelming political power, which thwarted development of the Banning Point property..................................................................................................9

By 2020, with an overhaul to the City's electoral system, the City could finally embrace a new era of development, which included the Banning Point property...............................................10

In early 2021, SLH delivered on the City's decades-long desire for development of the Banning Point property.............................11

In early 2022, the City approved all the discretionary entitlements required for the Banning Point project .....................12

In April 2022, on PAG's behalf, Flynn filed a petition for writ of mandate and a complaint for injunctive relief to challenge the City's approval of the project...................................................14

For months and months, Flynn waged a smear campaign against Councilmember Hamlin to force her resignation – creating a seat on the City Council for Flynn ..................................................15

Flynn's scheme to destroy the Banning Point project hit a snag when the Riverside Superior Court ruled that the City's approval of the project complied with CEQA and was supported by substantial evidence...................................................................17

To stop City Council from reapproving the project, Flynn used her position as councilmember to taint the July 9, 2024, public hearing ..................................................................................18

Despite *five hours* of testimony and deliberation, Councilmember Flynn and Councilmembers Happe and Minjares were unable to identify or articulate facts to support the findings necessary for denial of the project .....................................................................20

Soon after the July 9th public hearing, SLH discovered and called out Councilmember Flynn's bias based on her participation in the July 3rd PAG meeting and the inadequacy of the City's evidence in support of its findings for denial of the project ........................21

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                    -2-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

**Page**

A City Council tainted by Councilmember Flynn's bias then denied the project just weeks after having deprived SLH of a fair public hearing on July 9th .................................................................23

In December 2024, Flynn strengthened her iron grip on political power with reelection as councilmember and appointment as the City's mayor .................................................................24

FIRST CAUSE OF ACTION (Petition for Writ of Administrative Mandate:  Violation of Rights to Procedural Due Process and Fair Hearing) .................................................................25

SECOND CAUSE OF ACTION (Petition for Writ of Administrative Mandate:  Violations of Government Code, Section 65300 et seq; Banning Municipal Code Sections, 17.04.030, 17.48.020, 17.56.050, 17.96.060) .................................................................28

THIRD CAUSE OF ACTION Violations of the Civil Rights Act, 42 U.S.C. Section 1983  (Denial of Procedural Due Process Under the Fourteenth Amendment) .................................................................30

FOURTH CAUSE OF ACTION Declaratory Relief Against All Defendants .................................................................34

PRAYER FOR RELIEF .................................................................35

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                 -3-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

Petitioner and plaintiff Sun Lakes Highland, LLC submits this verified petition for writ of administrative mandate and complaint for (1) violations of the Civil Rights Act, 42 U.S.C. Section 1983 (denial of procedural due process under the Fourteenth Amendment) and (2) declaratory relief against respondent and defendant the City of Banning, a municipal corporation, and Does 1 through 10, and alleges as follows:

### INTRODUCTION

1.      In April 2021, SLH purchased roughly 47 acres of undeveloped, commercially zoned property, located within the Sun Lakes Village North Specific Plan area of the City of Banning, commonly known as the "Sun Lakes community." For more than 40 years, the City has on multiple occasions (with numerous owners) sought to facilitate the development of SLH's property, commonly known as the Banning Point property, to help boost the local economy with new jobs and infrastructure.  In December 2020, the City adopted a *fifth* amendment to the Sun Lakes Village North Specific Plan to establish three different land use districts for the Banning Point property each of which would contemplate and allow for a variety of permitted and conditionally permitted uses.  In 2021, consistent with these underlying land use designations and development standards approved by the City, SLH submitted plans to boost the local economy with new jobs and infrastructure with the development of the Banning Point project:  a proposed 619,959 square foot industrial warehouse with 10,000 square feet of associated office space and six commercial/retail buildings totaling approximately 34,000 square feet.  On information and belief, the Banning Point project was all but guaranteed to rescue the City's struggling economy, which is largely comprised of economically disenfranchised residents, who live well below the regional median income level.

2.      But some Banning residents within the City's Sun Lakes community, who for years and years have shown little regard for the broader community by isolating themselves behind the Sun Lakes community's high walls, gated barriers,

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                    -4-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1  and lush green golf courses (regional water shortages notwithstanding), had

2  different plans for the Banning Point property.  Among these self-interested Banning

3  residents was Sheri Flynn (elected to City Council in December 2023) who helped

4  form and lead the well-funded Pass Action Group organization, commonly known

5  as "PAG," to bolster opposition against the Banning Point project and deny SLH its

6  constitutionally protected property interests related to SLH's ownership and

7  development rights in the Banning Point property.  Sheri Flynn was a member of the

8  PAG Executive Board, signed letters, agreements, and pleading verifications on

9  behalf of PAG, and was an outspoken advocate for PAG in proceedings related to

10  the City's consideration and ultimate approval of the Banning Point project.  PAG's

11  sole and exclusive corporate purpose is and was to defeat the Banning Point project,

12  disenfranchising the City's broader community by depriving residents of new jobs,

13  increased tax revenue, and an overall boost to the City's economic development.

14      3.    When the City Council approved the project in February 2022, Flynn

15  coordinated and directed PAG to file a lawsuit challenging the City's approvals

16  under the California Environmental Quality Act and State Planning and Zoning Law

17  and asserting that three of the five City Councilmembers that voted on the project

18  were biased in favor of the project thereby violating PAG's right to a fair hearing.

19  The Court ultimately rejected and denied all of Flynn's and PAG's claims

20  challenging the project except for a single finding that Councilmember Mary

21  Hamlin had demonstrated an unacceptable probability of a risk of bias.  The Court

22  ordered that the City vacate and set aside the project approvals and directed that any

23  future reconsideration of the project be conducted without the participation of

24  Councilmember Hamlin.

25      4.    SLH is informed and believes that during the pendency of the lawsuit,

26  Flynn devised a plan to turn the City Council upside down and position herself as a

27  Councilmember with the requisite power to control and manipulate the City's

28  development goals within the Sun Lakes Village North Specific Plan area.  Flynn's

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

391960.00003/4891-8160-4075.4                    -5-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1  plan also aimed to reverse the equal distribution of power that by-district elections
2  in 2018 had provided to the broader community.  In less than a year, "resident
3  Flynn" became "Councilmember Flynn" after she used PAG to file the
4  aforementioned lawsuit against the City and City Council, waged a smear campaign
5  against a sitting Councilmember to force their resignation (Councilmember Hamlin),
6  and then ran to fill that vacancy after campaigning for signatures to hold a special
7  recall election.

8       5.     Once vested with her governmental authority, and after the Court's
9  rejection of all of Flynn's and PAG's claims against the project except for the bias
10  claim involving Councilmember Hamlin, now-Councilmember Flynn engaged in a
11  series of coordinated efforts with PAG to influence the City Council's
12  reconsideration of entitlements for the Banning Point project.  On information and
13  belief, Councilmember Flynn's personal animus toward the project tainted the City
14  Council's July 9, 2024, public hearing at which the City reconsidered the project
15  and the subsequent hearing on September 10, 2024, that ultimately resulted in the
16  adoption of Resolution 2024-151, wrongfully denying SLH the entitlements needed
17  to proceed with development of the Banning Point project.  As a result,
18  Councilmember Flynn's influence compromised the City's obligations to fair and
19  impartial governance, shirking its legal duty to serve all residents, members of the
20  community, and project applicants with integrity and equity.

21       6.     As a result of all of this, the City has intentionally deprived SLH of its
22  "constitutional guarantee" of due process.  *Cleveland Bd. of Educ. v. Loudermill*,
23  470 U.S. 532, 541 (1985).  More specifically, the City has denied SLH its right to
24  procedural due process to be heard before an unbiased decisionmaker, and thus
25  deprived SLH of its constitutionally protected property interests related to SLH's
26  ownership and development rights in the Banning Point property.  The deprivation
27  of SLH's constitutional rights also violates section 1983 of the Civil Rights Act.  In
28  addition, the City's findings in support of Resolution 2024-151 are woefully

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                    -6-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1  inadequate, unsupported by substantial evidence, and insufficient to justify or

2  sustain the denial of the Banning Point project.  This petition and complaint became

3  necessary because the City blatantly violated its constitutional and statutory

4  obligations to SLH and the Banning Point project.

5      7.    By this petition and complaint, SLH seeks damages, a judicial

6  declaration regarding the City's deprivation of SLH's due process rights, and a writ

7  that requires that the City vacate and set aside its adoption of Resolution 2024-151,

8  and conduct a new, fair, and unbiased hearing on the Banning Point project.

9                              **THE PARTIES**

10     8.    Sun Lakes Highland, LLC, is a Delaware limited liability company and

11  is the owner of the property designated as Assessor's Parcel Number 419-140-057.

12  That property is located in the Sun Lakes Village neighborhood of the City of

13  Banning, California.

14     9.    Defendant and Respondent City of Banning is, and at all times

15  mentioned in this complaint was, a public/municipal entity duly organized and

16  existing under and by virtue of the laws of the State of California.

17     10.   SLH is ignorant of the true names and capacities of the defendants sued

18  herein as Does 1 through 10, inclusive, and therefore sues these defendants by such

19  fictitious names.  SLH will seek leave to amend this complaint to allege their true

20  names and capacities when ascertained.  SLH is informed and believes that each of

21  such fictitiously named defendants is in some manner responsible for the acts,

22  injuries, and damages alleged in this complaint.

23     11.   SLH is informed and believes that at all times mentioned in this

24  complaint, defendants Does 1 through 10, inclusive, were the agents, servants, and

25  employees of their co-defendants and, in doing the things mentioned in this

26  complaint, were acting within the course and scope of their authority as such agents,

27  servants, and employees with the permission and consent of their co-defendants.

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

391960.00003/4891-8160-4075.4          -7-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

## JURISDICTION AND VENUE

12.    This case arises under the United States Constitution and 42 U.S.C. sections 1983 and 1988.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. sections 1331, 1343, and 1367(a).

13.    This Court is the appropriate venue for this case pursuant to 28 U.S.C. section 1391(b)(2).  SLH's property is located in this judicial district, the actions complained of took place in this judicial district, documents and records relevant to the allegations are maintained in this judicial district, and the defendants are present and conduct their affairs in this judicial district.

## GENERAL ALLEGATIONS

**Since the early 1980's, the City has tried and tried to promote development on the Banning Point Property.**

14.    The Banning Point property is located within the Sun Lakes Village North Specific Plan, which was originally approved by the City on February 28, 1983.  The majority of the roughly 963 acres making up the Specific Plan has been developed for decades, but the City, for one reason or another, could not induce a developer to build on the 47 acres that comprised the Banning Point property.  For years and years, the lack of development on the Banning Point property became an issue for the City.  SLH is informed and believes that the Banning Point property became an attractive nuisance, resulting in illegal dumping on the property and transient activities that were not only an eyesore but further strained the already under-resourced City.

15.    In 2006, the City amended the Specific Plan in hopes of spurring development of the Banning Point property by designating it for auto dealership uses.  Yet the market did not support the auto-sales use, so the land persisted as an attractive nuisance for another *fourteen years*, despite efforts by the prior owners, including affiliates of members of SLH.

16.    More specifically, in 2011, an affiliate of a member of SLH purchased

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                                    -8-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1  the Banning Point property, setting the stage for what many hoped would be a

2  transformative development in the City.  Between 2012 and 2018, that affiliate

3  identified and marketed several viable uses of the Banning Point property, including

4  retail, entertainment, and automotive development.  However, on information and

5  belief, powerful anti-growth factions within the Sun Lakes community obstructed

6  all.  The Sun Lakes residents vehemently opposed every potential use for the

7  Banning Point property, fueling their agenda to stifle economic progress and growth

8  in the City.

9  **Throughout the mid-2010's, the City's electoral system granted residents of the**

10  **Sun Lakes community overwhelming political power, which thwarted**

11  **development of the Banning Point property.**

12      17.    SLH is informed and believes that the City's electoral system reflected

13  the anti-growth sentiments toward developing the Banning Point property.

14  Throughout the 2010's, Banning's at-large election system enabled Sun Lakes

15  residents to exert outsized influence over Citywide decisions, obstructing growth

16  initiatives that could benefit the City's broader community.  On information and

17  belief, public complaints grew over this power imbalance, with many asserting that

18  Sun Lakes residents were deliberately blocking economic opportunities, especially

19  for underrepresented, minority communities.

20      18.    For example, in or around 2016, the City's at-large election system

21  raised serious questions about its potential violation of the California Voting Rights

22  Act.  The general public then demanded a shift to by-district elections.  As a result,

23  in or around 2018, the City transitioned to by-district elections, disrupting the Sun

24  Lakes community's long-standing grip on power.  And on information and belief,

25  this change introduced fairer representation across the City, including for its diverse

26  population.

27      19.    Yet rather than accepting the by-district election system and the

28  equitable distribution of power, residents of the Sun Lakes community would

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                    -9-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1  reassert their political control through Flynn and PAG.

2  **By 2020, with an overhaul to the City's electoral system, the City could finally**

3  **embrace a new era of development, which included the Banning Point**

4  **property.**

5        20.      In 2020, desperate for development of the Banning Point property, the

6  City went back to the drawing board to "reimagine [the Banning Point property]

7  with a viable development concept that reflects today's market conditions."  As

8  noted, the City amended (by unanimous vote) the Specific Plan for a fifth time,

9  commonly referred to as Amendment No. 5, to establish three different land use

10  districts for the Banning Point property each of which would contemplate and allow

11  for a variety of permitted and conditionally permitted uses:

12  • **Business & Warehouse District**.  The Business & Warehouse District use

13        consists of approximately 30.22 acres and is located in the northwest

14        portion of the Specific Plan area, adjacent to the Sun Lakes Village

15        shopping center, the Southern Pacific railroad, and the I-10 freeway.  The

16        Specific Plan permits general warehousing by right within this district.

17  • **Office & Professional District**.  The Office & Professional District is

18        approximately 10.06 acres and is located between the Business &

19        Warehouse District and the residential units to the east of the property that

20        are part of the Sun Lakes Country Club community.

21  • **Retail & Service District**.  The Retail & Service District is about 6.83

22        acres and is located between the Business & Warehouse District and the

23        Sun Lakes Country Club residential units to the south.  Amendment No. 5

24        allows for a wide range of uses varying from clothing stores, pet

25        grooming, gyms, and restaurants.

26        Below is an aerial image depicting the City's three different land use districts

27  for the undeveloped 47 acres under Amendment No. 5.

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

391960.00003/4891-8160-4075.4                                    -10-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1
2
3
4
5
6
7
8
9
10
11



12    21.    In December 2020, the City adopted Amendment No. 5 to the Sun

13 Lakes Village North Specific Plan after determining, among other things, that the

14 land uses contemplated for the Banning Point property would not be detrimental to

15 public interests and would ensure development of a desirable character, compatible

16 with the surrounding neighborhood.

17 **In early 2021, SLH delivered on the City's decades-long desire for development**

18 **of the Banning Point property.**

19    22.    In early 2021, SLH submitted an application to the City to develop the

20 Banning Point property.  As noted, SLH's Banning Point project proposed the

21 development of a 619,959 square foot industrial warehouse with 10,000 square feet

22 of associated office space and six commercial/retail buildings totaling

23 approximately 34,000 square feet.  Due to entitlement requirements under

24 Amendment No. 5, SLH proposed to develop the project in two phases.  In phase

25 one, SLH would develop the light industrial warehouse.  Roughly a year later,

26 during phase two, SLH would develop the retail/restaurant buildings.  The site plan

27 for SLH's proposed two-phase development of the project is depicted below.

28

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4

-11-



**In early 2022, the City approved all the discretionary entitlements required for the Banning Point project.**

23.    Over the next several months, the City reviewed SLH's applications for the Banning Point project, including an application for design review approval (Banning Mun. Code § 17.56.050) and tentative parcel map approval (Banning Mun. Code § 16.14.050.B ), as well as the project's CEQA document, an Addendum to the previously approved Program EIR for Amendment No. 5 to the Sun Lakes Village North Specific Plan.

24.    On October 19, 2021, the City Planning Commission held a public hearing to consider the project entitlements.  At the hearing, City staff and SLH representatives provided detailed presentations on the project and fielded questions from the Planning Commission.  After taking public comment, including comment from Sheri Flynn and other PAG representatives, the Planning Commission voted to continue the hearing to allow for additional discussions on the project.

25.    Among those in opposition to the Banning Point project was Flynn, a fairly new resident of Banning.  (SLH is informed and believes that Flynn moved to

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                                                     -12-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

Banning in 2019.)  Flynn repeatedly voiced her opposition at numerous Planning Commission and other public hearings.

26.    On December 1, 2021, the Planning Commission reconvened and, after taking further public comment and deliberating thereon, voted to accept City staff's recommendation to approve the project entitlements.  More specifically, the Planning Commission voted to approve Design Review No. 21-7008, and to recommend that the City Council approve Tentative Parcel Map No. 38164.  As part of its recommendation, the Planning Commission adopted the required findings for both the project's Design Review approval and the Tentative Parcel Map.

27.    On January 11, 2022, PAG appealed the Planning Commission's approval of Design Review No. 21-7008 and recommendation for approval of Tentative Parcel Map No. 38164 to the City Council.  The appeal hearing was set for February 17, 2022.

28.    On February 17, 2022, all but one of the City Councilmembers (Councilmember Hamlin) voted to deny the PAG appeal and approve the project, including approval of Design Review No. 21-7008 and Tentative Parcel Map No. 38164 and adoption of the project's CEQA Addendum.

29.    Notwithstanding the City's approval of the project, SLH remained willing to engage with PAG about its concerns regarding the project.  For that reason, on March 23, 2022, SLH entered into a tolling agreement with PAG and the City to toll and suspend all statutes of limitations for PAG to file a lawsuit against the City and SLH related to the project.  Flynn signed this tolling agreement on behalf of PAG, listing her title as "Pass Action Board Member."

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

391960.00003/4891-8160-4075.4                -13-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1

Dated: March 23, 2022                    PASS ACTION GROUP

2

3                                                By: _Sheri Flynn_

4                                                Name: _Sheri Flynn_

5                                                Title: _Pass Action Board Member_

6

7          30.    Soon after, SLH terminated the tolling agreement when it became

8    apparent that Flynn's (and by extension PAG's) agenda with regards to the project

9    was simple:  prevent the development of the Banning Point project at all costs.  As

10   discussed more fully below, Flynn did just that as demonstrated by her unabashed

11   campaign for political power to overturn the City Council's approval of the project.

12   **In April 2022, on PAG's behalf, Flynn filed a petition for writ of mandate and a**

13   **complaint for injunctive relief to challenge the City's approval of the project.**

14         31.    On April 18, 2022, Sheri Flynn, acting as the representative of PAG,

15   filed a lawsuit against the City alleging that: (1) the City failed to comply with

16   CEQA by not preparing a subsequent or supplemental environmental impact report;

17   (2) Councilmember Mary Hamlin was biased and tainted the City Council's

18   decision-making process; and (3) the findings made for the project's Design-Review

19   approval and the Tentative Parcel Map were unsupported by substantial evidence.

20   Councilmember Flynn signed the verification for PAG's lawsuit (highlighting

21   added).

22

23

24

25

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                    -14-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

**VERIFICATION**

I, Sheri Flynn, have read the foregoing Verified Petition for Writ of Mandate and Complaint for Injunctive Relief and know its contents.

I am authorized to execute this verification on behalf of Pass Action Group. I have read the foregoing Verified Petition for Writ of Mandate and Complaint for Injunctive Relief and am familiar with its contents. All facts alleged in the above Petition, and not otherwise supported by exhibits or other documents, are true of my own knowledge, except as to matters stated on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April /8, 2022, at Banning, California.



Sheri Flynn

**For months and months, Flynn waged a smear campaign against Councilmember Hamlin to force her resignation – creating a seat on the City Council for Flynn.**

32.     While PAG's petition and complaint was pending, Flynn launched a campaign for signatures to hold a special recall election for Councilmember Hamlin's seat as the head of City Council District Three.  In roughly two months, Flynn obtained the requisite signatures to place Councilmember Hamlin's recall election on the ballot all while blaming the entire City Council for approving the Banning Point project entitlements and implementing Amendment No. 5 to the Sun Lakes Village North Specific Plan.  Below is an excerpt of Flynn's letter to readers of the City's newspaper, the Record Gazette, touting herself as the "leader of the recall" (highlighting added).

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                    -15-                    CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

https://www.recordgazette.net/opinion/letters_to_editor/aug-26-2022/article_78b51f7c-2a09-11ed-a95f-93cbe3bf9c2a.html

## Aug. 26, 2022

Sep 1, 2022

As the leader of the recall of Mary Hamlin, city councilperson, District 3, I would like to thank all those who helped launch, execute and collect signatures to successfully get the recall on the ballot. It would not have happened without your dedication and perseverance.

Again, thank you!

A recall is an example of direct democracy and one of the few avenues open to citizens to remove an elected official who refuses to represent their best interests- who puts their own personal conscience or financial gain before the needs, desires, health and welfare of their constituents.

We had over 1,800 actual signatures, collected over a 70-day period. We submitted 1,686 to the Registrar of Voters with 1,604 accepted out of the 1,259 required to place it on the ballot.

The entire city council, did a great disservice to the Sun Lakes community, by voting for the zone change that opened the door to a 620,000-square-foot industrial warehouse just feet from a memory care and hospice facility and directly across from a well established 6,000-plus senior residential community. The environmental impact report (EIR) and zone change from commercial/retail to industrial warehouse was prepared and passed under the cover of COVID — a time when no one would leave their homes and most were glued to the numbers ticking off on their TV screens.

Once Sun Lakers found out about the warehouse, almost a year after the zone change and EIR were already approved, you ridiculed and dismissed our valid concerns of harmful air and noise pollution, increased traffic and the overall lowering of our quality of life. Mary Hamlin claimed that it was only a few vengeful people who wanted her recalled. All those who were eager to sign the recall proved that arrogant assumption wrong.

You never once have apologized or admitted your mistakes and continue to defend them.

33.    SLH is informed and believes that by September 2022, Flynn had successfully ousted Councilmember Hamlin and forced her resignation, ultimately resulting in Hamlin moving out of California, fearing for her family's safety.  On

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

391960.00003/4891-8160-4075.4                -16-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1  information and belief, Flynn then wasted no time campaigning to fill

2  Councilmember Hamlin's seat on the City Council in order to wield the political

3  power for her own self-interest and stated goal of preventing the development of the

4  Banning Point project.

5      34.    On December 13, 2022, Flynn was elected to City Council and was

6  officially sworn in weeks later.  On information and belief, Flynn remained an

7  official PAG Board member even after the special election, only dropping her

8  membership "officially" shortly before being sworn in as City Councilmember.

9      **Flynn's scheme to destroy the Banning Point project hit a snag when the**

10     **Riverside Superior Court ruled that the City's approval of the project**

11     **complied with CEQA and was supported by substantial evidence.**

12     35.    On March 15, 2024, following briefing and oral argument in PAG's

13  lawsuit against the City, the Riverside Superior Court issued its decision.  The Court

14  rejected PAG's primary arguments that the City had violated CEQA by approving

15  the Addendum for the project and that the findings made in support of the project

16  approvals and findings of consistency with the City's General Plan were not

17  supported by substantial evidence.  The Court also rejected PAG's assertions that

18  Councilmembers Torres and Wallace were improperly biased in favor of the project;

19  however, in a narrow and limited ruling, the Court found that Councilmember

20  Hamlin had made public statements that gave rise to an unacceptable probability of

21  a risk of bias (despite the fact that she had voted to deny the project).

22     36.    The Court ordered that a writ of mandate be issued directing the City

23  to: (i) vacate and set aside all of the project approvals which were considered at a

24  hearing by Councilmember Hamlin; and (ii) ensure that any future hearings related

25  to the project approvals be conducted without the participation of Councilmember

26  Hamlin (who, by that time, had already been replaced by Sheri Flynn as part of her

27  coordinated effort to seize power at the City).

28

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                  -17-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

**To stop City Council from reapproving the project, Flynn used her position as councilmember to taint the July 9, 2024, public hearing.**

37.    In accordance with the trial court's March 15, 2024, ruling and subsequent writ of mandate, the City Council scheduled a public hearing for July 9, 2024, to (i) vacate and set aside the 2022 project approvals; and (ii) reconsider the project without the participation of Councilmember Hamlin.

38.    Unbeknownst to SLH, and despite her role as a presumed objective, and unbiased decisionmaker for the City, Councilmember Flynn attended and spoke at a PAG townhall meeting on July 3rd – mere days before the July 9th hearing – and pushed for its members to attend the July 9th meeting to oppose the project.  She cajoled them to send letters to the City Council and she instructed the PAG members how to ensure that their comments were included as part of the record of proceedings.  Despite her history with PAG and clear bias against the project, Flynn also told everyone at that meeting that she had no intent to recuse herself and that she had an obligation to let people know her stance on the Banning Point project.

39.    For example, Flynn stated:

"I just wanted to comment on when you go to speak, uh, in January the City Council went to action minutes only, so if you go to speak and you do not send it in by email or by mail, whatever you want to send in, it will not be placed in the minutes and it will not be recorded.  So you must also speak but also turn whatever you speak into a city clerk by 5 pm preferably the day before but you can get it in as late as 5 pm the day of and I just want to make sure everyone knows that because you'll go up there and speak and there will be no record of it other than a video that you would have to watch.  No verbatim.  Verbatim is no longer being used.  It is action minutes it only records in the minutes what action was finally taken.  The votes and what action was finally taken.  The votes and what anyone says or even whether you're for or against something is not even recorded. **So be sure to send in**

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                    -18-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

**your comments ahead of time** [emphasis added].

So, on the 9th, you should send in to make sure it gets to the City Clerk by the 8th but she should still accept them by 5 pm on the 9th.  To the City Clerk.  You must mail it to the City Clerk which is Caroline Patton.  So its cpatton@banningca.gov.

**Not only do I have an obligation to let people know where I stand, I have a duty to let people know where I stand.  And so I am not going to recuse myself.** [Emphasis added.] [Applause] **And I think I have a lot of valuable information to give, and that is why I'm not recusing myself.  And I do not have to recuse myself**."  (Emphasis added.)

40.    During the July 9th public hearing, Councilmember Flynn openly echoed PAG's anti-growth agenda, reading from what appeared to be a pre-prepared list of questions and statements that were identical to the baseless claims and allegations raised by PAG in its lawsuit that the Banning Point project was inconsistent with the policies, goals, and objectives outlined in the City's General Plan and Amendment No. 5.  Claims and allegations that were expressly rejected by the trial court in its March 15, 2024, ruling.

41.    Also during the July 9th public hearing, Councilmember Flynn questioned SLH's representative, Josh Zemon, about a "rumor" that SLH had contributed $4,000,000 into a City "housing authority fund" in 2019 that was the alleged basis for former Councilmember Hamlin's statements that the project would generate an approximate equivalent amount of revenue for the City.  The clear intent of this line of questioning – based upon admittedly nothing more than mere "rumor" and speculation – was to imply that SLH was improperly (and indirectly) attempting to "buy" councilmember votes for the project in advance of the 2022 hearing through the alleged housing-fund contributions.  Although Mr. Zemon stated unequivocally that no such payment or donation had ever been made either by or on behalf of SLH, the damage caused by Councilmember Flynn's question and the

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                -19-                CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1   associated implication was already done.

2        42.   Councilmember Happe, who previously voted to adopt the necessary

3   findings to approve Sun Lakes Highland's project, now opposed the project.

4   Councilmember Minjares also opposed the project. But the three opposing

5   Councilmembers that made up the majority of the City Council had a problem –

6   they could not present rational findings to deny the project.

7        43.   By allowing Councilmember Flynn to participate in the July 9th hearing

8   and decision on the project despite her clear, unequivocal bias against the project,

9   the City violated SLH's (and the public's) procedural due process rights to a fair

10   hearing before unbiased decisionmakers. See Banning Municipal Code

11   § 17.48.020(A) ("Requests for permits and other regulatory determinations must be

12   processed fairly, and evenhandedly . . . *so that due process is provided*.") (emphasis

13   added.)

14   **Despite *five hours* of testimony and deliberation, Councilmember Flynn and**

15   **Councilmembers Happe and Minjares were unable to identify or articulate**

16   **facts to support the findings necessary for denial of the project.**

17        44.   For nearly five hours of the public hearing, Councilmembers Flynn,

18   Happe, and Minjares provided mere unfounded opinions – not facts or evidence – to

19   support their opposition to the project and ignored the multitude of project-design

20   features and improvements that refuted and contradicted their unsupported opinions

21   and beliefs that the project would be inconsistent with and adversely impact the

22   surrounding community.

23        45.   For example, during the July 9th public hearing, Councilmember Flynn

24   exclaimed to the City Attorney that she could not reasonably be expected to identify

25   the grounds for denial "on the spot." So instead of denying the project, the City

26   Council continued the matter and directed staff to prepare a resolution of denial of

27   the Design Review approval – not the Tentative Parcel Map – based on the

28   following "facts:"

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4      -20-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

- the project is inconsistent with the City's General Plan  because: (i) "the circulation element of their design sucks… ," (ii) "the project will not provide a nonpolluting industrial use and will not provide jobs for city residents," and (iii) the project "does not protect residential neighborhoods from potentially significant sources of community noise;"

- the project will unreasonably interfere with the use and enjoyment of neighboring existing or future development and will not result in vehicular or pedestrian hazards because "there are no protections for pedestrians or golf carts using Sun Lakes Boulevard and connecting it to the project or the project to Sun Lakes;" and

- the project is incompatible with the character of the surrounding neighborhood  because:  (i) "its proximity to sun lakes, its only 800 ft from residential," (ii) the project site is "landlocked by residential," and (iii) "the easterly parcel will not be provided with substantial screening and buffering of the residential and assisted living uses to the east of the building."

**Soon after the July 9th public hearing, SLH discovered and called out Councilmember Flynn's bias based on her participation in the July 3rd PAG meeting and the inadequacy of the City's evidence in support of its findings for denial of the project.**

46.    Shortly after the July 9th public hearing, SLH learned of Councilmember Flynn's participation in the July 3rd PAG meeting based on a video recording of that meeting posted on the Internet.  SLH's review of that video recording made it clear that Councilmember Flynn was "coaching" the PAG Board and community members on how to oppose the project to the City Council.  Further, the statements made by Councilmember Flynn and the PAG members showed that they considered themselves a singular, cohesive team whose mission was to

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                    -21-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1  generate opposition to the Banning Point project.  The PAG members expressly

2  stated that Councilmember Flynn was "on our team" in advising that no letters

3  opposing the project need to be sent to her attention prior to the July 9th meeting – a

4  statement that Flynn did not contradict.

5       47.    In its July 25, 2024, letter, SLH informed the City's mayor and the City

6  Council of this clear and unequivocal evidence of Councilmember Flynn's pre-

7  hearing bias and commitment to oppose the Banning Point project.  Yet the City

8  remained silent, taking no action to conduct a new, fair, and unbiased public hearing

9  on the Banning Point project.

10      48.    On August 29, 2024, PAG's attorney sent a letter to, among others, the

11  City's mayor and the City Council in an attempt to defend Councilmember Flynn's

12  participation in the July 9th public hearing and the City Council's "evidence" in

13  support of its findings for denial of the project.  First, the August 29th letter tried to

14  "spin" Councilmember Flynn's role at the July 3rd PAG meeting as purely

15  informational despite her extensive comments that clearly showed her "coaching"

16  the PAG Board and community members on how to oppose the project to the City

17  Council.  Next, the August 29th letter took the position that SLH's objections to

18  Councilmember Flynn's were untimely because SLH could have discovered the

19  video recording of the July 3rd PAG meeting before the July 9th public hearing.

20  Finally, PAG's letter simply repeated Councilmembers Flynn's, Happe's, and

21  Minjares' unfounded opinions in of support their opposition to the project, ignoring

22  the project's many features and improvements that refuted and contradicted their

23  unsupported opinions and beliefs that the project would be inconsistent with and

24  adversely impact the surrounding community.

25      49.    PAG's baseless legal and factual contentions were addressed in a

26  subsequent September 9, 2024, letter from SLH's counsel to the City's mayor and

27  City Council.  Again, the City took no action to conduct a new, fair, and unbiased

28  public hearing on the Banning Point project.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

391960.00003/4891-8160-4075.4                    -22-                    CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

**A City Council tainted by Councilmember Flynn's bias then denied the project just weeks after having deprived SLH of a fair public hearing on July 9th.**

50.    On September 10, 2024, the City Council held its final hearing on the project.  City staff prepared three different resolutions for the City Council to consider.

- Resolution 2024-149:  a resolution approving the design review approval, the parcel map, and ultimately the project.  As the City staff pointed out, the trial court already upheld the findings approving the project.  Staff also referred back to the July 9, 2024, staff report where it meticulously went through each of the finding requirements and explained in detail why the project satisfied each of those findings.

- Resolution 2024-150:  a resolution that approved parcel map, but denied the design review approval.  City staff indicated that the "facts supporting findings for denial of [the design review approval] include facts articulated by Councilmembers Minjares, Flynn, and Happe on July 9, 2024," which are discussed above.  However, staff cautioned against this approach and instead pleaded with the City Council to first consider Sun Lakes Highland's request for a new, impartial hearing.

- Resolution 2024-151:  a resolution that provided an outright denial of the project.  Staff provided no comment on this resolution, but the lack of supportable findings within the resolution itself made it clear that staff did not believe the City was justified in making these findings.

51.    The City Council ultimately adopted Resolution 2024-151 and denied the project in its entirety.

52.    On September 25, 2024, SLH formally requested that the City Council reconsider its adoption of Resolution 2024-151 by noticing a new public hearing on the project as permitted under Municipal Code section 17.68.140.

53.    On October 8, 2024, the City Council denied SLH's request for

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4          -23-          CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1  reconsideration thereby leaving SLH with no choice but to seek the Court's
2  assistance in compelling the City's compliance with its constitutional and statutory
3  obligations related to SLH and the Banning Point project.

4  **In December 2024, Flynn strengthened her iron grip on political power with**
5  **reelection as councilmember and appointment as the City's mayor.**

6     54.    On December 10, 2024, Councilmember Flynn was officially reelected
7  and sworn in as District 3's councilmember for the next *four years* – retaining her
8  seat on City Council until December 20*28*.  That same day, under Banning
9  Municipal Code section 2.04.070, the newly sworn-in City Council appointed Flynn
10 as the City's mayor.  In this political position, Mayor Flynn is the "nominal head" of
11 the City Council (Banning Mun. Code §2.04.070(A)(1)) and the "designated
12 representative" for "expressing the official City position on an issue" (City Council
13 Manual § 8.2(a)).

14    55.    On information and belief, the City has vested Mayor Flynn with
15 significant authority to determine the course of future development of the Banning
16 Point property based on the following mayoral roles and responsibilities:

17    •  Chairing the successor agency to the City's former community
18       redevelopment agency (Banning Mun. Code § 2.04.070(A)(4));

19    •  Chairing the City's housing authority (Banning Mun. Code
20       § 2.04.070(A)(4)

21    •  Appointing the members of the historic preservation commission subject
22       only to the City Council's approval (Banning Mun. Code § 2.46.20(B));

23    •  Appointing *all* City representatives on non-City organizations after
24       consultation with the City Council (City Council Manual § 5.4(a)); and

25    •  Appointing the members of committees, boards, and commissions "to
26       assist in the conduct and operation of the City government" subject to the
27       approval of the City Council (City Council Manual § 5.4(b)(ii)).

28    56.    On information and belief, Mayor Flynn will use her newfound

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                -24-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1  political office and her position as councilmember to continue blocking SLH's

2  development of the Banning Point project.

3  **FIRST CAUSE OF ACTION**

4  **(Petition for Writ of Administrative Mandate:  Violation of Rights to**

5  **Procedural Due Process and Fair Hearing)**

6       57.     SLH incorporates by this reference all above allegations as though fully

7  set forth herein.

8       58.     Respondents/Defendants acted in a quasi-adjudicatory capacity when

9  they denied SLH's development applications for the Banning Point project with the

10  City's adoption of Resolution 2024-151.

11       59.     Where a city council acts in a quasi-adjudicatory capacity, the

12  councilmembers are required to ensure a fair hearing for the applicant and the

13  public.  *Woody's Group, Inc. v. City of Newport Beach* (2015) 233 Cal.App.4th

14  1012, 1021. A fair hearing is one in which the "decision maker is free of bias for or

15  against a party."  *Morongo Band of Mission Indians v. State Water Resources*

16  *Control Bd.* (2009) 45 Cal.4th 731, 737.  Invalidation of a decision is required where

17  a decisionmaker "crosses the line into advocacy" for or against a project, yet still

18  participates in the decision.  *Petrovich Development Company, LLC v. City of*

19  *Sacramento* (2020) 48 Cal.App.5th 963, 974.  The "prehearing bias of one (decision

20  maker is] enough, by itself, to invalidate" the decision.  *Woody's Group*, 233

21  Cal.App.4th at 1016.

22       60.     Further, the conduct of the City's Councilmembers is governed by the

23  "Manual of Procedural Guidelines for the Conduct of City Council and Constituent

24  Body/Commission Meetings for the City of Banning."  Banning Municipal Code

25  § 2.04.080.  The City Council manual states:  "For quasi adjudicative matters

26  involving public hearings, the members of the Legislative Body shall not prejudice

27  the matter prior to the public hearing, shall be fair and impartial, and shall decide the

28  matter based upon the evidence and the statutorily required findings ... For such

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                                    -25-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

matters, Legislative Body members should·avoid expressing an opinion or divulging their thought process until after the public hearing has completed."  City Council Manual§ 8.l(d), (e).

61.    Additionally, Banning Municipal Code section 17.48.020, governing filing procedures for, among other things, permits, states:  "Requests for permits and other regulatory determinations *must be processed fairly, and evenhandedly, and in a way that puts all applicants on an equal footing with one another.*  Steps in the application process should be clearly laid out, and adhered to by staff as well as by the applicant, *so that due process is provided.  Both applicants and the public need to have a level of comfort in the process, and a level of confidence that reasonable and predictable outcomes will be achieved.*"  Banning Municipal Code § 17.48.020(A).

62.    SLH is informed and believes, and thereon alleges, that the City must vacate and set aside its adoption of Resolution 2024-151, and conduct a new, fair, and unbiased hearing on the Banning Point project.  Civ. Proc. Code, § 1094.5, subd. (b) (issuance of writ of administrative mandate is appropriate where there was not a fair hearing).

63.    SLH is informed and believes that the City's procedures for reviewing SLH's development applications for the Banning Point project were constitutionally inadequate and unfair as they deprived SLH of a meaningful opportunity to be heard before an unbiased decisionmaker, and thus has deprived SLH of its constitutionally protected property interests related to SLH's ownership and development rights in the Banning Point property.

64.    Unbeknownst to SLH, and despite her role as a presumed objective and unbiased decisionmaker for the City, Councilmember Flynn attended and spoke at a PAG townhall meeting on July 3rd and pushed for its members to attend the July 9th meeting to oppose the project.  She cajoled them to send letters to the City Council, and she instructed the PAG members how to ensure that their comments were

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                    -26-                    CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1  included as part of the record of proceedings.  She also told everyone at that meeting

2  that she had no intent to recuse herself and that she had an obligation to let people

3  know her stance on SLH's project.

4      65.    During the July 9th public hearing, Councilmember Flynn read from

5  what appeared to be a pre-prepared list of questions and statements that were

6  identical to baseless claims and allegations raised by PAG in its lawsuit and

7  expressly rejected by the trial court.  In addition, Councilmember Flynn insinuated,

8  without any factual basis, that SLH's representative, Josh Zemon, was attempting to

9  "buy" councilmember votes for the project in advance of the 2022 hearing through

10  the alleged housing-fund contributions.

11      66.    By allowing Councilmember Flynn to participate in the July 9th hearing

12  and decision on the project despite her clear, unequivocal bias against the project,

13  the City violated SLH's (and the public's) procedural due process rights to a fair

14  hearing before unbiased decisionmakers.

15      67.    As a result of the foregoing actions and defects, the City deprived SLH

16  of its constitutional right to a fair hearing and prejudicially abused its discretion and

17  failed to proceed in the manner required by law, including the U.S. and California

18  Constitutions, State Planning and Zoning Law and Banning Municipal Code and

19  Manual of Procedural Guidelines, by adopting Resolution No. 2024-151 and

20  denying the project approvals.

21      68.    SLH therefore seeks a peremptory writ of administrative mandate

22  directing the City to vacate and set aside its adoption of Resolution 2024-151, and

23  conduct a new, fair, and unbiased hearing on the Banning Point project.

24      69.    SLH has no plain, speedy, and adequate remedy in the ordinary course

25  of law.

26      70.    SLH has exhausted its administrative remedies, SLA is excused from

27  exhausting any available remedies, or exhaustion is futile, especially in light of

28  Flynn's reelection as a councilmember and appointment as the City's mayor.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4

-27-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

71.     SLH has a direct and beneficial interest in the City's full and complete compliance with the applicable law, including the U.S. and California Constitutions, State Planning and Zoning Law, and Banning Municipal Code and Manual of Procedural Guidelines, which guarantee SLH's right to a fair hearing.

72.     The claims asserted and relief requested by SLH will benefit the larger community and will confer a significant benefit on the general public by allowing for commercial/industrial development on the subject property and eliminating the attractive-nuisance issue.  Accordingly, an award of attorneys' fees is appropriate pursuant to Code of Civil Procedure, section 1021.5, and otherwise.

**SECOND CAUSE OF ACTION**

**(Petition for Writ of Administrative Mandate:  Violations of Government Code, Section 65300 et seq; Banning Municipal Code Sections, 17.04.030, 17.48.020, 17.56.050, 17.96.060)**

73.     SLH incorporates by this reference all above allegations as though fully set forth herein.

74.     California law generally requires all land-use decisions to be consistent with the approving agency's general plan. *Neighborhood Action Group v. County of Calaveras* 156 Cal.App.3d 1176, 1184 (1984); *Resource Defense Fund v. County of Santa Cruz* 133 Cal.App.3d 800, 806 (1982).

75.     The Banning Municipal Code requires the City to make certain mandatory findings in order to issue a Design Review and Tentative Map approval including, among other things, that the proposed project is consistent with the City's General Plan and applicable zoning and development standards.

76.     Where an administrative agency is required to make findings to support its decision, the findings must "bridge the analytic gap between the raw evidence and ultimate decision." *Topanga Assn. for a Scenic Community v. County of Los Angeles* 11 Cal.3d 506, 515 (1974).  The findings must be "sufficient both to enable the parties to determine whether and on what basis they should seek review and, in

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                    -28-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1    the event of review, to apprise a reviewing court of the basis for the [Council's]

2    action." *Id.*, at p. 514.  A reviewing court "must scrutinize the record and determine

3    whether substantial evidence supports the administrative agency's findings." *Id.*, at

4    pp. 514-15.

5        77.    The City properly made these findings when it originally approved the

6    Banning Point project entitlements in 2022, which findings were upheld as valid and

7    found to be supported by substantial evidence by the Court in its March 15, 2024,

8    ruling denying the claims asserted by PAG in its lawsuit challenging the project.

9        78.    The City's findings set forth in Resolution No. 2024-151 denying the

10    Banning Point project are markedly different and fail to meet applicable legal and

11    evidentiary requirements.

12        79.    SLH is informed and believes that the City failed to proceed in the

13    manner required by law and abused its discretion in adopting Resolution 2024-151

14    because the findings set forth in the resolution are not supported by substantial, or

15    any, evidence and are therefore insufficient and inadequate to support or justify

16    denial of the Banning Point project.

17        80.    The "facts" supporting the findings outlined in Resolution No. 2024-

18    151 are simply "conclusions" that are inconsistent with both the project's CEQA

19    analysis the Addendum and the City's previous findings approving the project in

20    2022 and underlying Sun Lakes Specific Plan Amendment No. 5, which are

21    supported by actual data and based on substantial evidence that the trial court

22    expressly upheld as sufficient in the prior litigation.  See *Pass Action Group v. City*

23    *of Banning*, No. CVRI2201482 at 9 (Riverside Cnty. Super. Ct. Mar. 15, 2024).  The

24    City's adoption of Resolution 2024-151 was therefore fundamentally flawed and a

25    violation of longstanding and firmly established California law.

26        81.    As a result of the foregoing actions and defects, the City deprived SLH

27    of its constitutional right to a fair hearing and prejudicially abused its discretion and

28    failed to proceed in the manner required by law, including the U.S. and California

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4    -29-    CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

Constitutions, State Planning and Zoning Law, and Banning Municipal Code and Manual of Procedural Guidelines, by adopting Resolution No. 2024-151 and denying the project approvals.

82.     SLH has no plain, speedy, and adequate remedy in the ordinary course of law.

83.     SLH has exhausted its administrative remedies, SLH is excused from exhausting any available remedies, or exhaustion is futile, especially in light of Flynn's reelection as a councilmember and appointment as the City's mayor.

84.     SLH has a direct and beneficial interest in the City's full and complete compliance with the applicable law, including the U.S. and California Constitutions, State Planning and Zoning Law, and Banning Municipal Code and Manual of Procedural Guidelines, which guarantee SLH's right to a fair hearing and require that Resolution No. 2024-151 be supported by substantial evidence.

85.     SLH is informed and believes that the claims asserted and relief requested by SLH will benefit the larger community and will confer a significant benefit on the general public by allowing for commercial/industrial development on the subject property and eliminating the attractive nuisance issue.  Accordingly, an award of attorneys' fees is appropriate pursuant to Code of Civil Procedure, section 1021.5, and otherwise.

**THIRD CAUSE OF ACTION**

**Violations of the Civil Rights Act, 42 U.S.C. Section 1983**

**(Denial of Procedural Due Process Under the Fourteenth Amendment)**

86.     SLH incorporates by this reference all of the above allegations as though fully set forth herein.

87.     The City has deprived SLH's constitutionally protected ownership and development rights in the Banning Point property by refusing to conduct a new, fair, and unbiased hearing on the Banning Point project.  The Fourteenth Amendment to the U.S. Constitution provides that "[n]o State shall … deprive any person of life,

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                                -30-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

liberty, or *property*, *without due process of law* … ."  U.S. Const. amend. XIV, § 1 (emphasis added).  "A procedural due process claim possesses two components: first, that an individual has been deprived of a constitutionally protected liberty or property interest; and second, that this deprivation … was rendered unconstitutional because it was undertaken without according the individual the appropriate hearing."  *Galland v. City of Clovis*, 24 Cal. 4th 1003, 1030 (2001) (citing *Zinermon v. Burch*, 494 U.S. 113, 133 (1990).

88.    SLH's constitutionally protected property interests are twofold.

89.    *First*, SLH's ownership of the property constitutes a constitutionally protected property interest under the Fifth Amendment of the U.S. Constitution (U.S. Const. amend. V) and Article 1 of the California Constitution (Cal. Const. art. I, § 1) and compensation must be made for its taking or damaging by a public entity. See *The Board of Regents of State Colleges v. Roth* (1972) 408 U.S. 564, 572-573 ("[P]roperty interests protected by procedural due process [include] … actual ownership of real estate … .").

90.    *Second*, SLH has a constitutionally protected property interest in the approval of its development application.  In the context of land use applications, the Ninth Circuit Court of Appeals has recognized that a constitutionally protected property interest is created where an applicant has a "reasonable expectation of entitlement" based on the language of the statute creating the property interest and "the extent to which the entitlement is couched in mandatory terms." *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994) (citation omitted); see also *Ass'n of Orange Cnty. Deputy Sheriffs v. Gates*, 716 F.2d 733, 734 (9th Cir. 1983).  Accordingly, a statute establishes "a constitutionally protected interest … if the procedural requirements are intended to be a 'significant substantive restriction' on [] decision making." *Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir. 1984) (citation omitted).

91.    SLH's constitutionally protected property interest in the approval of its

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                    -31-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1  development application is based on the design review and tentative parcel map

2  standards in the City's Municipal Code.  More specifically, Section 17.56 contains

3  the standards the City must consider in evaluating design review applications, and

4  Section 16.14.050.B sets forth the standards the City Council must consider in

5  evaluating tentative parcel map applications.  These standards are couched in

6  mandatory and limiting terms, significantly restricting the City's decision making,

7  as they require the City to consider only the specific factors in determining whether

8  to approve or deny the respective design review and tentative parcel map

9  applications.  The City's adherence to these substantive "checks" on its review and

10  approval of SLH's applications establishes a "reasonable expectation" of entitlement

11  to the approval of its development application.

12      92.    SLH's "reasonable expectation" of entitlement to the approval of its

13  development application is further demonstrated by the City Council's prior

14  approval of the tentative parcel map and design review for the project, both of which

15  were upheld by the Riverside County Superior Court.  The trial court held that

16  substantial evidence supported the City Council's findings and approval of the

17  project, although it vacated the project approval on other grounds completely

18  unrelated to the adequacy of the City's findings or the project's environmental

19  review.

20      93.    Thus, SLH's expectation of entitlement stems, in part, from the fact

21  that *the City Council already determined that the project satisfied the requirements*

22  *for approval, and those actions were upheld by the trial court*.  See *Pass Action*

23  *Group v. City of Banning*, No. CVRI2201482 at 5 (Riverside Cnty. Super. Ct. Mar.

24  15, 2024).  Accordingly, SLH has a constitutionally protected property interest in

25  the approval of its development application.

26      94.    The City's procedures for reviewing SLH's applications were

27  constitutionally inadequate and unfair as they deprived SLH a meaningful

28  opportunity to be heard before an unbiased decisionmaker.  *Galland v. City of*

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                                    -32-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

*Clovis*, 24 Cal.4th 1003, 1031, 1034 (2001) ("[t]he Due Process Clause is intended to prevent government officials from abusing [their] power or employing it as an instrument of oppression.")  A decision-maker does not have to be completely indifferent to the general subject matter of the issue or project presented in order to be impartial.  *Andrews v. Agricultural Labor Relations Bd.* 28 Cal.3d 781, 790 (1981).  But "'[a]"fair trial in a fair tribunal is a basic requirement of due process … .'"  *Bullock v. City and County of San Francisco*, 221 Cal.App.3d 1072, 1091 (1990) (abrogated on unrelated grounds in *Griset v. Fair Pol. Pracs. Comm'n*, 25 Cal.4th 688, 698 (2001)); *Nasha, supra*, 125 Cal.App.4th at pp. 482-483.  A biased decisionmaker is "constitutionally unacceptable."  *Bullock*, *supra*, 221 Cal.App.3d at p. 1091.  "The right to a fair procedure includes the right to impartial adjudicators."  *Rosenblit v. Superior Court* 231 Cal.App.3d 1434, 1448 (1991).

95.     SLH is informed and believes that Councilmember Flynn's years-long advocacy on behalf of PAG prior to the July 9, 2024, public hearing, including her comments and "call to action" to PAG members at the July 3rd meeting mere days before the City Council was set to reconsider the project, as well as her continuing post-hearing statements establish and confirm the existence of her predisposition and bias against the Banning Point project.  The City's actions in permitting Councilmember Flynn to participate in the July 9, 2024, public hearing and to allow Councilmember Flynn to vote on the project entitlements on September 10, 2024, deprived SLH of its constitutional right to a fair hearing before an unbiased decisionmaker.

96.     Because of the City's acts, omissions, and conduct, the City has wrongfully, intentionally deprived SLH of its constitutionally protected property interests related SLH's ownership and development rights in the Banning Point property.

97.     SLH has suffered and will continue to suffer significant monetary damages.  SLH's total damages are in an amount not yet determined, but in excess

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

391960.00003/4891-8160-4075.4                    -33-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

of $25,000,000.  In addition, SLH has incurred and will continue to incur attorneys' fees for the prosecution of this action, which fees are recoverable under 42 U.S.C. section 1988 and California Code of Civil Procedure, sections 1021.5 and 1036.

### FOURTH CAUSE OF ACTION

### Declaratory Relief Against All Defendants

98.    SLH incorporates by this reference all above allegations as though fully set forth herein.

99.    An actual controversy has arisen between SLH, on the one hand, and the defendants, on the other hand, regarding the duties and obligations of the defendants under the law.  Among other things, the SLH contends and, on information and belief, the defendants dispute that:

    a.  The actions of the City have resulted in Civil Rights Act violations because the City denied SLH procedural due process and the right to a fair hearing by permitting Councilmember Flynn to participate in the July 9, 2024, public hearing and allowing Councilmember Flynn to vote on the project entitlements on September 10, 2024.

    b.  The City must vacate and set aside its adoption of Resolution 2024-151, and conduct a new, fair, and unbiased hearing on the Banning Point project.

100.    SLH seeks a judicial declaration of the rights and duties of SLH and the defendants with respect to the claims and contentions alleged in paragraph 99 above. Such declaration is necessary and appropriate at this time so that the respective rights and obligations of the parties are ascertained.  A judicial declaration is also required because SLH has suffered and will continue to suffer damages from the defendants' actions or lack thereof.

101.    To the extent SLH has an obligation to exhaust administrative remedies in connection with the City's denial of entitlements for the Banning Point project, SLH did so several times including, but not limited to, having SLH's attorneys

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

391960.00003/4891-8160-4075.4                -34-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1  engage in written correspondence with the City and submitting SLH's request for
2  reconsideration of the adoption of Resolution 2024-151 under Municipal Code
3  section 17.68.140.  The City denied SLH's reconsideration request.

4      102.   Thus, to the extent any other administrative remedies might be
5  available to SLH, attempting them would be a futile exercise, especially in light of
6  Flynn's reelection as a councilmember and appointment as the City's mayor; the
7  City is single-minded in its efforts to prevent development of the Banning Point
8  project.

9  **PRAYER FOR RELIEF**

10      WHEREFORE, Sun Lakes Highland, LLC prays for judgment against the
11  defendants and respondents as follows:

12  **On the first cause of action:**

13      1.   For alternative and peremptory writs of mandate directing the City to
14  vacate and set aside Resolution No. 2024-151, denying the applications for
15  Tentative Parcel Map 38164 and Design Review DR 21-7008 for the Banning Point
16  project, and conduct a new, fair, and unbiased hearing on the Banning Point project.

17  **On the second cause of action:**

18      1.   For alternative and peremptory writs of mandate directing the City to
19  comply with all applicable laws, including the U.S. and California Constitutions,
20  State Planning and Zoning Law, and Banning Municipal Code, in connection with
21  all future proceedings related to the Banning Point project.

22  **On the third cause of action:**

23      1.   For a determination that the actions of the City have resulted in Civil
24  Rights Act violations because the City denied SLH procedural due process by
25  permitting Councilmember Flynn to participate in the July 9, 2024, public hearing,
26  and allowing Councilmember Flynn to vote on the project entitlements on
27  September 10, 2024.

28      2.   For compensation and damages against the City in an amount

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

391960.00003/4891-8160-4075.4

-35-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1   according to proof, but in excess of $25,000,000, with interest on that amount at the

2   appropriate legal rate from the date of the actions giving rise to this claim;

3        3.      For costs, including, but not limited to, reasonable attorneys' fees as

4   allowed under 42 U.S.C. section 1988 and California Code of Civil Procedure

5   sections 1021.5 and 1036, and otherwise; and

6   **On the fourth cause of action:**

7        1.      That the rights, duties, and liabilities between SLH and the defendants

8   be fully determined and declared by this Court, including a declaration of the

9   following:

10            (a)      The actions of the City have resulted in Civil Rights Act

11  violations because the City denied SLH procedural due process by permitting

12  Councilmember Flynn to participate in the July 9, 2024, public hearing and allowing

13  Councilmember Flynn to vote on the project entitlements on September 10, 2024.

14            (b)      The City must vacate and set aside its adoption of Resolution

15  2024-151, and conduct a new, fair, and unbiased hearing on the Banning Point

16  project.

17            (c)      For costs, including, but not limited to, reasonable attorneys' fees

18  as allowed under 42 U.S.C. section 1988 and California Code of Civil Procedure,

19  sections 1021.5 and 1036, and otherwise.

20  **On all causes of action in the complaint:**

21        1.      For costs of suit incurred in this litigation; and

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

391960.00003/4891-8160-4075.4                    -36-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1    2.    For all such other and further relief as the Court deems just and proper.

2

3    Dated:  January 7, 2025          ALLEN MATKINS LECK GAMBLE
                                        MALLORY & NATSIS LLP
4                                     K. ERIK FRIESS
                                      LUCAS A. URGOITI
5

6                                     By: _____
                                          K. ERIK FRIESS
7                                         Attorneys for Petitioner and Plaintiff
                                          SUN LAKES HIGHLAND, LLC
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

391960.00003/4891-8160-4075.4                -37-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Sun Lakes Highland, LLC demands a jury trial in this action on all issues so triable.

Dated:  January 7, 2025

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
K. ERIK FRIESS
LUCAS A. URGOITI

By: _____

K. ERIK FRIESS
Attorneys for Petitioner and Plaintiff
SUN LAKES HIGHLAND, LLC

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

391960.00003/4891-8160-4075.4

-38-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT

1

**VERIFICATION**

2    I have read the foregoing VERIFIED FIRST AMENDED PETITION FOR

3    WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY RELIEF and

4    know its contents.

5    I am an officer of petitioner and plaintiff Sun Lakes Highland, LLC, and am

6    authorized to make this verification for and on its behalf, and I make this

7    verification for that reason.  The matters stated in the foregoing document are true of

8    my own knowledge, except as to those matters which are stated on information and

9    belief; and, as to those matters, I am informed and believe that they are true.

10    I declare under penalty of perjury under the laws of the state of California that

11    the foregoing is true and correct.

12    Executed on January 7th, 2025, at Maricopa County, Arizona.

13

14    _____

15    David Sellers

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

391960.00003/4891-8160-4075.4                -39-

CASE NO. 5:24-cv-02603-DTB
VERIFIED FIRST AMENDED PETITION FOR
WRIT OF MANDATE AND COMPLAINT