UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| SUN LAKES HIGHLAND, LLC, a Delaware limited liability company,<br><br>Petitioner and Plaintiff,<br><br>v.<br><br>CITY OF BANNING, a municipal corporation, et al.,<br><br>Respondents and Defendants. | Case No. 5:24-cv-02603-DTB<br><br>**ORDER GRANTING DEFENDANTS CITY OF BANNING AND SHERI FLYNN'S MOTION TO DISMISS SECOND AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT** |

**I.**

**PROCEEDINGS**

On December 6, 2024, petitioner and plaintiff Sun Lakes Highland, LLC ("Plaintiff"), a Delaware limited liability company, filed a Petition for Writ of Mandate and Complaint, naming as respondents and defendants the City of Banning ("the City") and DOES 1 through 10, inclusive. (Docket No. 1). On January 7, 2025 (prior to the filing of a response), Plaintiff filed a First Amended Petition for Writ of

Mandate and Complaint, also naming as respondents and defendants the City and DOES 1 through 10, inclusive. (Docket No. 15). On March 19, 2025 (prior to the filing of a response), Plaintiff filed a "Motion for Leave to File Second Amended Petition/Complaint" ("Motion for Leave to Amend") (Docket No. 28), with the proposed Second Amended Petition for Writ of Mandate and Complaint attached thereto (Docket No. 28-2 at 2-56).[1] On March 25, 2025, the City filed a Non-Opposition to the Motion for Leave to Amend. (Docket No. 34). On March 31, 2025, the Court granted the Motion for Leave to Amend. (Docket No. 35).

On March 31, 2025 (in accordance with the Court's March 31, 2025 Order, see Docket No. 35), Petitioner filed a Second Amended Petition for Writ of Mandate and Complaint ("SAP"). (Docket No. 36). The SAP names as defendants the City, Sheri Flynn ("Flynn"), a member of the City of Banning's City Council, and DOES 1 through 10, inclusive. (SAP at 1, 11). Defendant Flynn is sued in her individual capacity only. (SAP at 1, 11, 44).

The SAP alleges that actions by the City and defendant Flynn (collectively referred to herein as "Defendants") have impermissibly denied Plaintiff the ability to subdivide and develop property purchased by Plaintiff in 2021. (SAP at 4-32). The mandate petition portion of the SAP seeks a writ of administrative mandate against the City for (1) violations of Plaintiff's rights to procedural and substantive due process and to a fair hearing and (2) violations of California Government Code Section 65300, et seq. and the City's Municipal Code Sections 17.04.030, 17.48.020, 17.56.050 and 17.96.060. (SAP at 1, 32-38). The Complaint portion of the SAP alleges four claims, namely, (1) the denial of procedural and substantive due process under the Fourteenth Amendment (42 U.S.C. § 1983), (2) retaliation (42 U.S.C. §

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

2

1983), (3) de facto taking (42 U.S.C. § 1983), and (4) declaratory relief.  (SAP at 1, 4, 38-50).  While all claims in the Complaint portion of the SAP are alleged against the City, only the second claim in the Complaint portion of the SAP (retaliation) is alleged against defendant Flynn.  (SAP at 38, 44, 46, 48).  As to the two claims in the mandate petition portion of the SAP, Plaintiff seeks alternative and peremptory writs of mandate against the City.  (SAP at 50).[2]  As to the four claims in the Complaint portion of the SAP, Plaintiff seeks, among other things, compensatory damages and declaratory relief.[3]  (SAP at 50-53).

On April 16, 2025, Defendants filed a Motion to Dismiss the SAP ("Motion to Dismiss") pursuant to Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and 12(b)(6) ("Rule 12(b)(6)").  (Docket No. 42).  Defendants move to dismiss the SAP on the grounds that the Court lacks subject matter jurisdiction over the two claims alleged in the mandate petition portion of the SAP and that the Complaint

---

[2] As to the claim alleging the violations of Plaintiff's rights to procedural and substantive due process and to a fair hearing, Plaintiff seeks alternative and peremptory writs of mandate "directing the City to vacate and set aside Resolution No. 2024-151, denying the applications for Tentative Parcel Map 38164 and Design Review DR 21-7008 on the Banning Point project, and conduct a new, fair, and unbiased hearing on the Banning Point Project," and "directing the City to vacate and set aside its October 8, 2024, denial of [Plaintiff's] request for reconsideration." (SAP at 50).

As to the claim alleging violations of California Government Code sections and Banning Municipal Code sections, Plaintiff seeks alternative and peremptory writs of mandate "directing the City to comply with all applicable laws, including the U.S. Constitutions, State Planning and Zoning Law, and Banning Municipal Code, in connection with all future proceedings related to the Banning Point project" and "directing the City to vacate and set aside its October 8, 2024, denial of [Plaintiff's] request for reconsideration."  (SAP at 50).

[3] With respect to the claim for declaratory relief, Plaintiff seeks a declaration that "[t]he actions of the City have resulted in Civil Rights Act violations because the City denied [Plaintiff] procedural and substantive due process by permitting Councilmember Flynn to participate in the July 9, 2024, public hearing, allowing Councilmember Flynn to vote on the project entitlements on September 20, 2024, decision regarding [Plaintiff's] request for reconsideration, resulting in the denial of that request," that "[t]he City must vacate and set aside its adoption of Resolution 2024-151, and conduct a new, fair, and unbiased hearing on the Banning Point project," and that "[t]he City must vacate and set aside its October 8, 2024, denial of [Plaintiff's] request for reconsideration."  (SAP at 52).

portion of the SAP fails to state a viable claim for relief.  As support for the Motion to Dismiss, Defendants filed a request that the Court take judicial notice of eleven attached exhibits.  (Docket No. 43; "RJN").[4]

The City filed an Answer to the SAP on April 16, 2025.  (Docket No. 45).  Flynn filed an Answer to the SAP on April 29, 2025.  (Docket No. 47).

On May 8, 2025, Plaintiff filed an Opposition to the Motion to Dismiss ("Opposition").  (Docket No. 48).  Defendants filed a Reply to the Opposition ("Reply") on May 15, 2025.  (Docket No. 13).[5]

For the reasons set forth below, the Court GRANTS Defendants' Motion to Dismiss.

/ / /

/ / /

/ / /

/ / /

---

[4] The exhibits are:  (1) Banning Municipal Code ("BMC") section 17.56.020; (2) BMC section 17.68.140; (3) Banning City Council Resolution 2024-151; (4) Banning City Council Resolution 2024-151; (5) Banning Manual of Procedural Guidelines section 10.3(d), amended by Banning City Council Resolution 2024-16; (6) letter from Plaintiff to Banning City Council, dated July 25, 2024; (7) Banning City Council Regular Meeting Minutes (without attachments), dated October 8, 2024; (8) Sun Lakes Village North Specific Plan, Amendment Number 5, Table 1 (Allowable Land Uses); (9) Ruling on Petition for Writ of Mandate/Complaint for Injunctive Relief in Pass Action Group v. City of Banning et al., Riverside County Superior Court, Case No. CVRI2201482, dated March 14, 2024, and Judgment, filed on April 9, 2024; (10) Proof of Service of Summons and Complaint, dated December 11, 2024, in Sun Lakes v. City of Banning, Case No. 5:24-cv-02603-DTB; and (11) BMC section 17.56.050.

Plaintiff has not opposed the request for judicial notice.  The request for judicial notice is GRANTED.  See Fed. R. Evidence 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); United States v. Black, 482 F.3d 1035, 1041 (9th Cir. 2007) (public records, including court documents, are proper subjects of judicial notice).

[5] On August 1, 2025 (following issuance of the Court's May 13, 2025, Standing Order, see Docket No. 49), the City filed the Certified Administrative Record.  (Docket Nos. 53-76).

The City's Motion to Stay Discovery (Docket No. 77) is pending before the Court.  The Court will address that motion in a separate order.

## II.

## SUMMARY OF THE SAP'S FACTUAL ALLEGATIONS

In April 2021, Plaintiff purchased approximately 47 acres of undeveloped, commercially zoned property ("the Banning Point property") within the Sun Lakes Village North Specific Plan area of the City, commonly known as the "Sun Lakes Community." (SAP at 4, 6, ¶¶ 1, 7). Although the majority of the Sun Lakes Village North Specific Plan, which is comprised of roughly 963 acres, has been developed for decades, the City, allegedly due to the influence of the Sun Lakes Community, has not allowed development of the Banning Point property. (Id. at 12, ¶¶ 25, 27).

In December 2020, the City amended, by unanimous vote, the Specific Plan (commonly referred to as "Amendment No. 5"), to establish three land-use districts for the Banning Point property, as follows: (1) The Business & Warehouse District, consisting of approximately 30.22 acres; (2) the Office & Professional District, consisting of approximately 10.06 acres; and (3) the Retail & Service District, consisting of approximately 6.83 acres. (SAP at 14-15, ¶¶ 31-32).

In 2021, Plaintiff submitted an application to the City to develop the Banning Point property, specifically, a 619,959 square-foot industrial warehouse with 10,000 square feet of office space and six commercial/retail buildings totaling approximately 34,000 square feet. (SAP at 15, ¶ 33).[6] The proposed project would take place over two phases; the first would involve the development of the light industrial warehouse; and the second would involve the development of the retail/restaurant buildings. (Id.).

/ / /

/ / /

---

[6] BMC section 17.56.020 requires the filing of an application for Design Review for "new development projects, redevelopment projects, or projects involving an intensification of land use." (RJN, Exhibit 1).

Over the next several months, the City reviewed Plaintiff's application, including an application for Design Review (No. 21-7008), a Tentative Parcel Map approval (No. 38164), and the project's California Environmental Quality Act ("CEQA") document, an addendum to the previously approved Environmental Impact report for Amendment No. 5. (SAP at 16-17, ¶¶ 34, 37). On October 19, 2021, the City Planning Commission held a public hearing to consider the project. (Id.). Flynn, believed to be a resident of the City beginning in 2019, as well as the founder and executive board member of Pass Action Group ("PAG"), and other PAG members, expressed opposition to the project. (SAP at 7, 16-17, ¶¶ 10, 36).

At a continued hearing on December 1, 2021, the City Planning Commission, after further public comment, voted to accept the City staff's recommendation to approve the Design Review and to recommend that the City Council approve the Tentative Parcel Map. (SAP at 17, ¶ 37).

The PAG appealed. (SAP at 17, ¶ 38). On February 17, 2022, all but one of the City Councilmembers (Councilmember Hamlin) voted to deny the PAG appeal and approve the project, including the approval of the Design Review and Tentative Parcel Map and the adoption of the project's CEQA Addendum. (Id., ¶ 39).

On April 18, 2022, PAG, with Flynn as its representative, filed a lawsuit in Riverside County Superior Court against the City (naming Plaintiff as a real party in interest), alleging that: (1) The City failed to comply with the CEQA by not preparing a subsequent or supplemental environmental impact report; (2) Councilmember Hamlin was biased and tainted by the City Council's decision-making process; and (3) the findings for approving the Design Review and Tentative Parcel Map were unsupported by substantial evidence. (SAP at 18-19, ¶ 42).

During the pendency of the suit, Flynn launched a campaign to hold a special election to recall Councilmember Hamlin. (SAP at 19-20, ¶ 43). By September 2022, Flynn had successfully forced Councilmember Hamlin's resignation. (Id. at 20, ¶

44).  On December 13, 2022, after campaigning for a few months, Flynn was elected to the City Council.  (<u>Id.</u> at 21, ¶¶ 44-45).

On March 15, 2024, the Riverside County Superior Court found that Councilmember Hamlin, who had voted against the approval of the project, had made public statements that gave rise to an unacceptable risk of bias (but rejected PAG's other arguments).  (SAP at 21, ¶¶ 46-47).  The Superior Court issued a writ of mandate directing the City to vacate and set aside the project approvals considered at a hearing by Councilmember Hamlin and to ensure that any future hearings related to project approvals be conducted without the participation of Councilmember Hamlin.  (<u>Id.</u> at 21-22, ¶ 48).

The City Council scheduled a public hearing for July 9, 2024, to vacate and set aside the 2022 project approvals and to reconsider the project without the participation of Councilmember Hamlin.  (SAP at 22, ¶ 50).  On July 3, 2024 (prior to that hearing), Flynn spoke at a PAG meeting and urged its members to attend the July 9 meeting to oppose the project, "cajoled" them to send letters to the City Council, and instructed them how to ensure their comments were included as part of the record.  (<u>Id.</u> at 22-23, 26, ¶¶ 51-52, 61).  Flynn also told the PAG members she had no intention of recusing herself and that she had an obligation to let people know her stance on the project.  (<u>Id.</u>).

At the July 9, 2024 public hearing, Flynn openly echoed PAG's anti-growth agenda, reading from a pre-prepared list of questions and statements that were identical to the baseless claims in PAG's lawsuit against the City.  (SAP at 23-24, ¶ 53).  Flynn also questioned Plaintiff's representative about a "rumor" regarding a 2019 $4,000,000 contribution into a City "housing authority fund" -- an untrue rumor -- to imply that Plaintiff was attempting to "buy" councilmember votes for the project before the 2022 hearing.  (<u>Id.</u> at 24, ¶ 54).  At the July 9, 2024 hearing, Councilmember Minjares and Councilmember Happe, who had previously voted to

adopt the necessary findings to approve the project, felt compelled to oppose the project; and Flynn and Councilmembers Minjares and Happe "provided nothing but unfounded opinions to support their opposition to the project." (Id. at 24-25, ¶¶ 55, 57).  The City Council continued the matter and directed staff to prepare a resolution of the denial of the Design Review approval only, based on the following:  "[T]he project is inconsistent with the City's General Plan because:  (i) 'the circulation element of their design sucks . . .,' (ii) 'the project will not provide a nonpolluting industrial use and will not provide jobs for city residents,' and (iii) the project 'does not protect residential neighborhoods from potentially significant sources of community noise'"; "the project will unreasonably interfere with the use and enjoyment of neighboring existing or future development and will result in vehicular or pedestrian hazards because 'there are no protections for pedestrian or golf cars using Sun Lakes Boulevard and connecting it to the project or the project to Sun Lakes'"; and "the project is incompatible with the character of the surrounding neighborhood because:  (i) 'its proximity to sun lakes, its only 800 ft. from residential,' (ii) the project site is 'landlocked by residential,' and (iii) 'the easterly parcel will not be provided with substantial screening and buffering of the residential and assisted living uses to the east of the building.'" (Id. at 25-26, ¶ 58).[7]

/ / /

/ / /

/ / /

/ / /

---

[7] At the July 9, 2024 hearing, the City adopted Resolution 2024-113, which states, in pertinent part, that "[t]he City Council hereby sets aside and vacates its previous approval of Tentative Parcel map 38164, approval of Design Review 21-7008 and denial of the appeal of the Planning Commission's approval of Design Review 21-7008, and adoption of an addendum, all in connection with the Banning Point project, and rescinds City Council Resolution 2022-14. (RJN, Exhibit 3).

In a letter dated July 25, 2024, Plaintiff informed the City's mayor and the City Council of Flynn's pre-hearing bias and commitment to oppose the project. (SAP at 26, ¶ 62).[8]  The City did not take any action to conduct a new, fair and unbiased hearing on the project. (Id.).

On August 29, 2024, PAG's attorney sent a letter to, among others, the City's mayor and the City Council in an attempt to support defendant Councilmember Flynn's participation in the July 9, 2024 public hearing and the findings for the denial of the project. (SAP at 26-27, ¶ 63).  On September 9, 2024, Plaintiff responded to the letter, alleging that PAG's legal and factual allegations in the August 29, 2024 letter were baseless. (Id. at 27, ¶ 64).  The City did not take any action to conduct a new, fair and unbiased hearing on the project. (Id.).

On September 10, 2024, the City Council held another hearing on the project. (SAP at 27, ¶ 65).  The City Council considered three resolutions prepared by City staff -- one approving the Design Review approval, the Tentative Parcel Map, and the project (Resolution 2024-149); one approving the Tentative Parcel Map but denying the Design Review approval (Resolution 2024-150); and one denying the project (Resolution 2024-151). (Id. at 27-28, ¶ 65).  The City Council adopted Resolution 2024-151. (Id. at 28, ¶ 66).[9]

---

[8] In that letter, Plaintiff demanded that Councilmembers Flynn and Happe recuse themselves from all future City Council hearings on the project based on their biases, that the City vacate and set aside all action taken at the July 9, 2024 hearing, including direction given to City Council staff to prepare a resolution, that the City hold a new, fair and unbiased hearing on the project, and that the remaining Councilmembers approve the project. (RJN, Exhibit 6).

[9] On September 10, 2024, the City Council adopted Resolution 2024-151, with Councilmembers Flynn, Happe, and Minjares voting for it and Councilmembers Sanchez and Wallace voting against it. (RJN, Exhibit 4).  In that Resolution, based on the findings that "[t]he design and improvement of the subdivision proposed under Tentative Parcel Map No. 38164 is inconsistent with the City's General Plan and the Sun Lakes Village North Specific Plan Amendment No. 5," "[t]he Project is inconsistent with the General Plan," "[t]he proposed project conflicts with and is inconsistent with one of the purposes of the City's Design Review process

On September 25, 2024, Plaintiff formally requested that the City Council reconsider its adoption of Resolution 2024-151 by noticing a new public hearing as permitted by BMC section 17.68.140. (SAP at 28, ¶ 67).[10]  Plaintiff's reconsideration request provided additional evidence of Flynn's bias, and was based, in part, on Flynn's refusal to recuse herself at the July 9, 2024 hearing and the September 10, 2024 denial of the project. (Id. at 28-29, ¶¶ 67-68). Instead of recusing herself from any deliberation over the request for reconsideration, Flynn injected herself into the discussion to ensure denial of the reconsideration request. (Id. at 29, ¶ 69).

On October 8, 2024, the City Council held a hearing on Plaintiff's request for reconsideration. (SAP at 29, ¶ 70). Although Councilmember Happe initially questioned whether the City Council was conflicted from considering the reconsideration request in light of the allegations of bias, the City Council, based on assurances from the City Attorney, considered the reconsideration request. (Id.). During public comment, residents of Sun Lakes wanted to know why Plaintiff got to request reconsideration; and Community Development Director David Newell noted that it was "part of the due process in the Municipal Code" and that "[t]his was not directed by any staff member[.]" (Id. at 30, ¶ 72). When Councilmember (and Mayor

---

which is to maintain the public health, safety and welfare and property throughout the City," "[t]he design and layout of the proposed project will unreasonably interfere with the use and enjoyment of neighboring existing or future development," "[t]he design and layout of the proposed project will result in vehicular and/or pedestrian hazards," and "[t]he design of the proposed project is incompatible with the character of the surrounding neighborhood," the City Council disapproved of the Tentative Parcel Map and upheld the appeal of the Planning Commission's approval of the Design Review. (Id.).

[10] BMC section 17.68.140 permits the filing of a request for reconsideration "within fifteen days following the final date of action." (RJN, Exhibit 2).

Under the City's Manual of Procedural Guidelines section 10.3(d), any City Councilmember "who voted with the majority may move to reconsider any action at the same meeting or at an adjourned meeting following the meeting at which the action was taken, provided that reconsideration shall not be permitted where a party other than the City has acted in reliance on [the City Council's] action and would be substantially prejudiced by such reconsideration."

Pro Tempore) Minjares asked whether the City Council wanted to move forward with reconsideration, Flynn allegedly berated the City Council until Councilmember Minjares withdrew the motion. (Id., ¶ 73). Following an off-the-record recess and following Councilmember Happe's statement that "I have nothing to add to the defense of" Flynn and Councilmember Happe's acknowledgment that Plaintiff had a due process right to request reconsideration, the City Council confirmed the end of the proceedings as a denial of Plaintiff's request to reconsider. (Id. at 30-31, ¶¶ 74-76; see also id. at 9, ¶ 14). "The minutes of the meeting further reflect that [Councilmember] Minjares brought the motion, that it was seconded, and that in association with a 14+ minute recess the motion was withdrawn with no explanation." (Id. at 31, ¶ 76).

On December 10, 2024, Flynn was reelected and sworn in as a Councilmember for four years (until 2028). (SAP at 31, ¶ 78). The same day, under BMC section 2.04.070, the new City Council appointed Flynn as the City's mayor. (Id.). As mayor, Flynn is the head of the City Council and is the "designated representative" for "expressing the official City position on an issue." (Id.).

### III.

### STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) is based on the alleged lack of subject matter jurisdiction. A Rule 12(b)(1) attack on jurisdiction can be facial or factual. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). "In a facial attack, the challenger asserts that the allegations in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. In considering a Rule 12(b)(1) motion to dismiss, a court must accept all factual allegations as true. Miranda v. Reno, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). "[A] Rule 12(b)(1) motion can attack the

substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or any other evidence properly before the court." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of claims alleged in a complaint.  A complaint may be dismissed for failure to state a claim for two reasons:  (1) Lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted).  To survive a Rule 12(b)(6) motion, a plaintiff must allege facts sufficient to state a claim that is plausible on its face.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  Plausibility does not mean probability but does require "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 566 U.S. at 678. A pleading that offers mere "labels and conclusions" or "a formulaic recitation of a cause of action's elements will not do."  Twombly, 550 U.S. at 555; see also Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1176 (9th Cir. 2021) ("Taken together, Iqbal and Twombly require well-pleaded facts, not legal conclusions . . . that 'plausibly give rise to an entitlement to relief' . . . .  The plausibility of a pleading thus derives from its well-pleaded factual allegations.") (quoting Iqbal, 556 U.S. at 679).

In considering a motion to dismiss, a court must accept all factual allegations in the complaint as true "and construe the pleadings in the light most favorable to the nonmoving party."  Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).  But the liberal pleading standard "applies only to a plaintiff's factual allegations."  Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989).  "[T]he tenet that

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678; see also Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) ("[W]e do not accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations."). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (citation omitted).

A court may consider exhibits attached to a complaint and incorporated by reference. See Petrie v. Electronic Game Card, Inc., 761 F.3d 959, 964 n.6 (9th Cir. 2014). However, a court is not required to accept as true allegations contradicted by exhibits attached to a complaint or conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). While on a Rule 12(b)(6) motion a court cannot consider evidence outside the pleadings, a court may "consider unattached evidence on which the complaint 'necessarily relies' if: (1) [T]he complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." United States v. Corinthian Colls., 655 F.3d 984, 999 (9th Cir. 2011) (citation omitted).

Rule 12(b)(6) is read in conjunction with Rule 8(a). Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2). While Rule 8 does not require detailed factual allegations, a complaint, at a minimum, must allege enough specific facts to provide both "fair notice" to a defendant of the particular claim being asserted and "the grounds upon which [that claim] rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation omitted); see also Iqbal, 556 U.S. at 678 (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"); Schmidt v.

Herrmann, 614 F.2d 1221, 1224 (9th Cir. 1980) (upholding Rule 8 dismissal of "confusing, distracting, ambiguous, and unintelligible pleadings").

If a court finds that a complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc). Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Id. at 1130-31; see also Fed.R.Civ.P. 15(a)(2) ("The court should freely give leave to amend [a pleading] when justice so requires."). However, if, after careful consideration, it is clear that a complaint cannot be cured by amendment, a court may dismiss without leave to amend. See Ebner v. Fresh, Inc., 838 F.3d 958, 968 (9th Cir. 2016) (Rule 15's liberal amendment policy "does not apply when amendment would be futile"); Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (holding that "there is no need to prolong the litigation by permitting further amendment" where the "basic flaw" in the pleading cannot be cured by amendment); see also Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988) ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment that would constitute a valid claim or defense.") (citation omitted).

## IV.

## DISCUSSION

**A.**    **The Motion to Dismiss the Claims Alleged in the Petition for Writ of Mandate is Granted on the Basis That They are Time-Barred.**

Defendants contend that the two claims alleged in the mandate petition portion of the SAP should be dismissed because they are time barred. (Motion to Dismiss at 16-21; Reply at 6-8). Plaintiff responds that those claims are timely and, therefore, should not be dismissed. (Opposition at 14-18).

/ / /

1.    <u>Statutes of Limitations.</u>

In California, there is a "90-day statute of limitations, applicable to both the filing and service of challenges to a broad range of local zoning and planning decisions." <u>Honig v. San Francisco Planning Dept.</u>, 127 Cal.App.4th 520, 526 (2005); <u>see</u> Cal. Govt. Code § 65009(c)(1).  An action challenging "any decision" by a "legislative body" regarding a permit provided for by a local zoning ordinance must be filed and served within 90 days of the legislative body's decision. <u>Save Lafayette Trees v. City of Lafayette</u>, 32 Cal.App.5th 148, 156 (2019).  The short statute of limitations is "[t]o provide certainty for property owners and local governments regarding decisions by local agencies made pursuant to the planning and zoning law." <u>Id.</u> at 155.

Moreover, in California, any action "to attack, review, set aside, void, or annul the decision of a[] . . . legislative body concerning a subdivision, or of any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, including, but not limited to, the approval of a tentative map or final map, shall not be maintained by any person unless the action or proceeding is commenced and service of summons effected within 90 days after the date of the decision."  Cal. Govt. Code § 66499.37; <u>see also</u> <u>Maginn v. City of Glendale</u>, 72 Cal.App.4th 1102, 1108 (1999) ("In Government Code section 66499.37, however, the Legislature expressly required not only that the action be commenced within 90 days, but also that service of summons be effected within the same 90 days.  The statutory language makes clear that the service requirement is mandatory.").  "Section 66499.37 was enacted to ensure that any challenge to local legislative or administrative acts or decisions taken pursuant to ordinances enacted under the authority of the Subdivision Map Act will be brought promptly." <u>Hensler v. City of Glendale</u>, 8 Cal.4th 1, 7 (1994).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.      Analysis.

The Court notes that Plaintiff does not dispute Defendants' contentions that the 90-day statute of limitations in Govt. Code § 65009(c)(1) applies to the City Council's decision to deny the Design Review (see Motion to Dismiss at 16) and to the City Council's decision to deny the Tentative Parcel Map (see Motion to Dismiss at 17).  The Court also notes that Plaintiff implicitly concedes that Plaintiff served the City with the Summons and Petition for Writ of Mandate and Complaint on December 11, 2024.  (Motion to Dismiss at 14-15; RJN, Exhibit 10).

The question is whether the 90-day statutes of limitations began to run on September 10, 2024, the date of the City Council's denials of the Design Review and the Tentative Parcel Map, as Defendants contend (see Motion to Dismiss at 15-21; Reply at 6-8), or on October 8, 2024, the date of the City Council's denial of Plaintiff's request for reconsideration, as Plaintiff contends (see Opposition at 14-18).  If the 90-day statutes of limitations began to run on September 10, 2024, Plaintiff would have needed to serve the City with the Summons and the Petition for Writ of Mandate and Complaint by no later than December 9, 2024.  If the 90-day statutes of limitations began to run on October 8, 2024, Plaintiff would have been required to serve the City with the Summons and the Petition for Writ of Mandate and Complaint by no later than January 6, 2025.

The Court finds that, with respect to the mandate petition portion of the SAP (see SAP at 32-38, ¶¶ 81-110), the statutes of limitations began to run on September 10, 2024, the date on which the City Council denied the Design Review and the Tentative Parcel Map.  See Cal. Govt. Code §§ 65009(c)(1), 66499.37.  On September 10, 2024, the date on which the City Council adopted Resolution 2024-151 (SAP at 28, ¶ 66; RJN, Exhibit 4), the City Council made the decisions to deny the Design Review and the Tentative Parcel Map.

/ / /

16

1    Plaintiff contends that the statutes of limitations did not begin to run until

2  October 8, 2024, the date of the City Council's hearing on Plaintiff's request for

3  reconsideration, for several reasons.  First, Plaintiff asserts that the October 8, 2024,

4  hearing was important because Plaintiff needed to make a request for reconsideration

5  in order to exhaust administrative remedies prior to filing the action.  (Opposition at

6  14-18).  However, Plaintiff has failed to cite, and the Court has not been able to locate,

7  any authority supporting the proposition that the exhaustion of administrative

8  remedies has a bearing on the commencement of the statute of limitations set forth in

9  Cal. Govt. Code §§ 65009(c)(1) and 66499.37.  Second, Plaintiff asserts that the City

10  did not make a final decision denying the Design Review until October 8, 2024.

11  (Opposition at 15-16).  However, the language of BMC section 17.68.140 (RJN,

12  Exhibit 1 ["If more complete or additional facts or information, which may affect the

13  original action taken on an application by a review authority are presented, the review

14  authority may reconsider such action taken, if a request for reconsideration is filed

15  with the department within fifteen days following the final date of action."]) and

16  Banning Manual of Procedural Guidelines section 10.3(d) (RJN, Exhibit 5 at 28

17  ["Any Legislative Body member who voted with the majority may move to

18  reconsider any action at the same meeting or at an adjourned meeting following the

19  meeting at which the action was taken . . . ."]), as well as the action taken by the

20  Councilmembers at the October 8, 2024 hearing (see SAP at 30-31, ¶¶ 73-76), do not

21  support Plaintiff's assertion.  Moreover, Plaintiff's reliance on California Code of

22  Civil Procedure 1094.6, which permits an extended statute of limitations period when

23  a request for reconsideration of a decision is available (Opposition at 16), is

24  unavailing.  See Weiss v. City of Del Mar, 39 Cal.App.5th 609, 625 (2019) ("As other

25  courts have held, [Govt. Code] section 65009 provides the applicable deadline for

26  service, even when Code of Civil Procedure section 1094.6 also applies.")

27  Although Plaintiff, as support for an extension of the statute of limitations when a

28

17

motion for reconsideration is filed, cites California Rule of Court 8.108, which provides that the time for civil appeals does not commence until a motion for reconsideration is decided, along with two cases -- <u>Honchariw v. County of Stanislaus</u>, 51 Cal.App.5th 243, 256 (2020) and <u>Millview Cnty. Water Dist. v. State Water Res. Control Bd.</u>, 32 Cal. App.5th 585, 592 (2019) (Opposition at 16-17) --, Rule of Court 8.108, <u>Honchariw</u>, and <u>Millview</u> are inapplicable to a land use decision involving the shorter statute of limitations found in Cal. Govt. Code §§ 65009(c)(1) and 66499.37.   Third (and finally), Plaintiff asserts that it is entitled to equitable tolling of the statutes of limitations. (Opposition at 17).  "Equitable tolling is a judge-made doctrine 'which operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.  This court has applied equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer not prejudice."  <u>Lantex v. Centex Homes</u>, 31 Cal.4th 363, 370 (2003).  It does not appear that equitable tolling applies here.  <u>See</u> <u>Honig</u>, 127 Cal.App.4th at 530-31; <u>Beresford v. Neighborhood Assn. v. City of San Mateo</u>, 207 Cal.App.3d 1180, 1186-87 (1989).  While Plaintiff claims that "[t]he City's Municipal Code establishes a reconsideration process, assuring applicants of an available remedy" and that "[d]uring that process, the City affirmed the legitimacy and timelines of [Plaintiff's] request, thus 'lull[ing] Plaintiff into a false sense of security,'" (Opposition, citing <u>Lantzy</u>, 32 Cal.4th at 383), Plaintiff, who has been represented by counsel, does not point to any aspect or portion of the City's Municipal Code which was deceptive or misleading or would have altered Plaintiff's understanding about the shorter statutes of limitations.

/ / /

/ / /

/ / /

Therefore, as to the mandate petition portion of the SAP (see SAP at 32-38, ¶¶ 81-110), the statute of limitations commenced on September 10, 2024 and expired on December 9, 2024.  Because Plaintiff served the City with the Summons and the Petition for Writ of Mandate and Complaint on December 11, 2024, two days after the expiration of the statutes of limitations, that mandate petition portion of the SAP is time barred.

Although Plaintiff attempts to get around the bar imposed by the statute of limitations by alleging in the mandate petition portion of the SAP separate claim(s) concerning the City Council's October 8, 2024 denial of Plaintiff's request for reconsideration (see e.g., SAP at 32, 34-35, ¶¶ 86-87, 90-92; id. at 50; see also Opposition at 14-15, 18), Plaintiff has failed to cite, and the Court is unable to locate, any authority supporting the proposition that a legislative body's discretionary decision not to consider a request for reconsideration constitutes a decision by a legislative body that would trigger the 90-day statutes of limitations set forth in Cal. Govt. Code §§ 65009(c)(1) and 66499.37.  As noted above, the shorter statutes of limitations were enacted to provide certainty for local governments regarding planning and zoning law decisions and to ensure prompt challenges to such decisions. Therefore, contrary to Plaintiff's assertion, the applicable statutes of limitations did not commence on October 8, 2024.

Accordingly, the Court GRANTS the Motion to Dismiss as to the two claims alleged in the mandate petition portion of the SAP.  Moreover, the Court concludes that the deficiency of these claims cannot be cured by amendment, since the limitations period has lapsed and cannot be reopened.Sinceamendment would be futile, the dismissal of these two claims is without leave to amend and with prejudice. See Knappenberger v. City of Phoenix, 566 F.3d 936, 942 (9th Cir. 2009) (Dismissal with prejudice appropriate where "'the pleadings could not possibly be cured by the allegation o other facts.'") (quoting Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir.

2000)); Elevation Plus, LLC v. City Council of Riverbank, Case No. 1:20-cv-01469-DAD-SKO, 2021 WL 2142681 at *5 (E.D. Cal. May 26, 2021) ("Because plaintiff's claims are plainly barred by the applicable limitations period under [Cal. Govt. Code] § 65009(c)(1), any amendment would be futile.") .

**B.**    **The City and Flynn's Motion to Dismiss the Claims Alleged in the Complaint Portion of the SAP is Granted.**

Defendants contends that the SAP should be dismissed because the four claims alleged in the Complaint portion of the SAP fail to state a viable claim for relief.  (Motion to Dismiss at 21-32).  Plaintiff contends that each claim alleged in the Complaint portion of the SAP states a proper claim for relief.  (Opposition at 18-28).

1.    Plaintiff has Failed to State Plausible Claims for Relief.

a.    Procedural and Substantive Due Process Violation (42 U.S.C. § 1983).

The Complaint portion of the SAP alleges a violation of procedural and substantive due process under the Fourteenth Amendment.  (SAP at 38-43, ¶¶ 111-26).  The gist of Plaintiff's claim is that "[t]he City has deprived [Plaintiff's] constitutionally protected ownership rights in the Banning Point property by refusing to conduct a new, fair, and unbiased hearing on the Banning Point projects or its motion for reconsideration."  (SAP at 39, ¶ 112).

The Fourteenth Amendment provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  "The touchstone of due process is protection of the individual against arbitrary action of government."  Wolff v. McDonnell, 418 U.S. 539, 558 (1974).  This Clause has both procedural and substantive components.  See e.g., Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 72 (2009).

/ / /

20

A procedural due process claim has two elements: (1) A protected property or liberty interest, and (2) a denial of adequate procedural protections.  Johnson v. Ryan, 55 F.4th 1167, 1179 (9th Cir. 2022); Pinnacle Armor, Inc. v. U.S., 648 F.3d 708, 716 (9th Cir. 2016) (citation omitted); see also Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993) ("A section 1983 claim based upon procedural due process thus has three elements: (1) [A] liberty or property interest protected by the Constitution; (2) a deprivation of interest by the government; (3) lack of process."); The Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").

The right to substantive due process "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'"  Collins v. City of Harker Heights, Tex., 503 U.S. 115, 125 (1992) (citation omitted).  "To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property."  Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (footnote and citation omitted).  Such a claim also requires a plaintiff to show that the conduct at issue "shocks the conscience."  County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998); Gonzalez v. City of Anaheim, 747 F.3d 789, 797 (9th Cir. 2014); Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008).

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"  American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59 (1999); see also Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz., 24 F.3d 56, 62 (9th Cir. 1994) ("A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution.")

(citations omitted). A property interest requires a person to "have more than an abstract need or desire for [a benefit]" and to "have more than a unilateral expectation of [a benefit]"; rather, a person must "have a legitimate claim of entitlement to [a benefit]." The Bd. of Regents, 408 U.S. at 577. "A protected property interest is present where an individual has a reasonable expectation of entitlement depriving from 'existing rules or understandings that stem from an independent source such as state law.'" Wedges/Ledges, 24 F.3d at 62 (citation omitted). Ass'n of Orange Cnty. Deputy Sheriffs v. Gates, 716 F.2d 733, 734 (1983); see also Groten v. California, 251 F.3d 844, 850 (9th Cir. 2001) ("Whether a statute creates a property interest depends largely upon the extent to which the statute limits an agency's discretion in denying a license to an applicant who meets the minimum requirement."); Goodisman v. Lytle, 724 F.2d 818, 820 (9th Cir. 1984) ("A constitutionally protected interest has been created only if the procedural requirements are intended to be a 'significant substantive restriction' on the University's decision making. If the procedures required impose no significant limitation on the discretion of the decision maker, the expectation of a specific decision is not enhanced enough to establish a constitutionally protected interest in the procedures.") (citation and internal citations omitted).

As to a Design Review application, BMC section 17.56.050, cited by Defendants (Motion to Dismiss at 22-23), provides that:

> Prior to making a determination, the review authority shall determine that the project adequately meets adopted City performance standards and design guidelines, based upon the following findings: A. The proposed project is consistent with the General Plan.[;] B. The proposed project is consistent with the Zoning Ordinance, including the development standards and guidelines for the district in which it is located.[;] C. The design and layout of the proposed project will not

unreasonably interfere with the use and enjoyment of neighboring existing or future development, and will not result in vehicular and/or pedestrian hazards.[;] D.   The design of the proposed project is compatible with the character of the surrounding neighborhood.

(RJN, Exhibit 11).

As to a Tentative Parcel Map, Defendants cite to two California Government Code sections, specifically, Cal. Govt. Code §§ 66473.5 and 66474.  (Motion to Dismiss at 23).

Cal. Govt. Code 66473.5 provides that:

No local agency shall approve a tentative map, or a parcel map for which a tentative map was not required, unless the legislative body finds that the proposed subdivision, together with the provisions for its design and improvement, is consistent with the general plan required by Article 5 (commencing with Section 65300) of Chapter 3 of Division 1, or any specific plan adopted pursuant to Article 8 (commencing with Section 65450) of Chapter 3 of Division 1.  [¶] A proposed subdivision shall be consistent with a general plan or a specific plan only if the local agency has officially adopted such a plan and the proposed subdivision or land use is compatible with the objectives, policies, general land uses, and programs specified in such a plan.

Cal. Govt. Code § 66474 provides, in pertinent part, that:

A legislative body of a city or county shall deny approval of a tentative map, or a parcel map for which a tentative map was not required, if it makes any of the following findings:   (a) That the proposed map is not consistent with applicable general and specific plans as specified in Section 65451.[;]  (b) That the design or

23

improvement of the proposed subdivision is not consistent with applicable general and specific plans.[;] (c) That the site is not physically suitable for the type of development.[;] (d) That the site is not physically suitable for the proposed density of development.[;] (e) That the design of the subdivision or the proposed improvements are likely to cause substantial environmental damage or substantially and avoidably injure fish or wildlife or their habitat.[;] (f) That the design of the subdivision or type of improvements is likely to cause serious public health problems.[;] (g) That the design of the subdivision or the type of improvements will conflict with easements, acquired by the public at large, for access through or use  of, property within the proposed subdivision.

As Defendants assert (Motion to Dismiss at 22-23), BMC section 17.56.050 and Cal. Govt. Code § 66473.5 and 66474 do not contain mandatory terms; rather, they appear to grant the City broad discretion to approve or deny a Design Review application and Tentative Parcel Map.[11]  While Plaintiff claims that "its ownership [of real estate], paired with the Municipal Code's and Banning Manual of Procedural Guidelines' limitation on the City's discretion, the Specific Plan's further limitation of that discretion, the City's previous approval of Design Review, and the Superior Court's rejection of most of PAG's challenge, creates a reasonable expectation of entitlement."  (Opposition at 20; see also id. at 19 ["[The] limitation on the City's discretion] is even stronger here, where the codified Specific Plan–developed with

---

[11] Plaintiff relies on BMC section 16.14.050.B and City Council Manual § 8.1(d), (e) to support its assertion that the City review of development/land use applications is "limited to specific, objective criteria" and "restrict the City's discretion."  (Opposition at 18-19; see also SAP at 40, ¶ 114 (discussing BMC section 16.14.050.B)) .  Since Plaintiff has not quoted or provided those provisions, the Court will not consider them.

[Plaintiff's] input–includes the map [Plaintiff] relied on its Design Review application. [Plaintiff's] expectation of entitlement stems not only from its property ownership but also from the fact the City already determined that Design Review satisfied all objective standards and requirements for approval and comported with the codified Specific Plan."; and "[Plaintiff's] expectation of entitlement is reinforced by the fact that the Superior Court remanded the Design Review only because of possible bias by a former councilmember, not due to any flaw in the project itself."]), Plaintiff has not provided any basis or authority, including in the City Council's 2022 findings approving the project, or in the Superior Court's March 14, 2024 findings and April 9, 2024 Judgment (see RJN, Exhibit 9), that limited the City's discretion in its reconsideration of the project. Simply put, the Complaint portion of the SAP does not adequately allege a reasonable expectation of entitlement based on a statute's limit of the City's discretion to deny a Design Review application and Temporary Parcel Map.

The allegations in the Complaint portion of the SAP are insufficient to state a plausible claim for procedural and substantive due process. See Breneric Associates v. City of Del Mar, 69 Cal.App.4th 166, 183-84 (1998) ("Because no protected property interest exists when there is significant discretion accorded the agency by law, regardless of whether or to what degree that discretion is actually exercised, the complaint does not allege a protected property interest and therefore [the plaintiff] has not stated a section 1983 claim based on denial of substantive due process."). Accordingly, dismissal of Plaintiff's claim for procedural and substantive due process is warranted.

> b.    Retaliation (42 U.S.C. § 1983).

The Complaint portion of the SAP alleges a claim of retaliation against the City and Flynn (in her individual capacity). (SAP at 44-46, ¶¶ 127- 46). Plaintiff claims that it "exercised its clearly established constitutional right under the First

Amendment to advocate for its project and to participate in defending against PAG's litigation in state court." (Id. at 44, ¶ 130).  Plaintiff further claims that "[i]n retaliation for [Plaintiff's participation in the PAG litigation and advocacy for its project, Flynn, after driving Councilmember Hamlin out of town and enthroning herself on the City Council in Hamlin's place, cajoled the City Council into denying [Plaintiff's] previously approved project on September 10, 2024, and into denying [Plaintiff's] request for reconsideration on October 8, 2024." (Id. at 45, ¶ 131).

An action taken in retaliation for the exercise of a First Amendment right is actionable under Section 1983.  See Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009); Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997).  This includes the right to petition the government for redress of grievances.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  "To state a First Amendment retaliation claim, a plaintiff must plausibly allege that (1) [it] was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." Capp v. County of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019) (citation and internal quotation marks omitted); see also Marez v. Bassett, 595 F.3d 1068, 1074 (9th Cir. 2010) (in order to establish a Section 1983 retaliation claim, a plaintiff must show:  "(1) [it] engaged in expressive conduct that addressed a matter of public concern, the governmental officials took an adverse action against [it]; and (3) [its] expressive conduct was a substantial or motivating factor for the adverse action.") (citation and internal quotation marks omitted).

Plaintiff has failed to allege all the requisite elements of a First Amendment retaliation claim.  As an initial matter, as Defendants assert (see Reply at 11), there are insufficient allegations about retaliatory actions taken by the City.  Moreover, Plaintiff asserts that it "alleged that the City and Flynn's actions would chill a person

from continuing to engage in the [protected] activity" (Opposition at 15, citing SAP at 8-9, 44-45, ¶¶ 13, 128-34), but Plaintiff has not alleged that the City and defendant Flynn's actions would chill a person from ordinary firmness from continuing to engage in the protected activity.  Finally, while Plaintiff asserts that the "protected activity was a factor in Flynn and the City's conduct" (Opposition at 15, citing SAP at 45, ¶ 131), Plaintiff has not alleged that the protected activity was a substantial or motivating factor in the City and defendant Flynn's conduct.

Since the Complaint portion of the SAP does not state a plausible claim of retaliation against the City and defendant Flynn, Plaintiff's retaliation claim is subject to dismissal.

c.      De Facto Taking (42 U.S.C. § 1983).

The Complaint portion of the SAP alleges that the City engaged in a de facto taking of Plaintiff's property.  (SAP at 46-48, ¶¶ 136-44).  According to Plaintiff: "Over the course of decades, . . . , the City–first under the outsize influence of the Sun Lakes community when the City's elections were at large and now under the control of Flynn and her PAG/Sun Lakes community contingency–has undertaken a scheme to prevent development of the Banning Point project and unconstitutionally, inversely condemn/de facto take and preserve it for a future use as an amenity to the Sun Lakes community, without the City's paying just compensation[.]"  (Id. at 46, ¶ 137).  Plaintiff specifically relies on the following actions by the City as support for its claim:  (1) "[T]he City, under the Sun Lakes community's outsized influence, has prevented any development of the Banning Point project, including by rejecting every project [Plaintiff] or its affiliates have proposed, including projects for which the property was specifically zoned.  Only when the Sun Lakes community briefly lost its grip over the City via the adoption of by-district elections did the City approve the project."; and (2) "[T]he City, at Flynn's and PAC, the Sun Lake community's urging, reneged on [Plaintiff's] previously approved project that it previously had

approved and the Superior Court in the *Pass Action Group* litigation found had been appropriately reviewed, and then denied reconsideration of the denial on October 8, 2024." (Id. at 47, ¶¶ 140-41). Plaintiff claims that the City's actions have "wrongfully deprived Plaintiff] of any reasonably economically viable use for the Banning Point property, rendered it unmarketable, and otherwise damaged the Banning Point property and [Plaintiff]."[12]

A public entity's action that directly and substantially interferes with property rights and thereby significantly impairs the value of the property constitutes a taking under the Fifth Amendment. Richmond Elks Hall Ass'n v. Richmond Redevelopment Agency, 561 F.2d 1327, 1330 (9th Cir. 1977). A de facto taking requires a showing that the government's actions deprived the plaintiff of "all economically viable use of the land." U.S. v. 99.66 Acres of Land, 970 F.2d 651, 657 (9th Cir. 1992).

Although Plaintiff asserts that "[a] de facto taking occurs when a public agency uses its authority as a 'property-taking device–to prevent meaningful development, thereby preserving land for public purposes without compensation" (Opposition at 17), none of the cases cited by Plaintiff to support that proposition are applicable to the instant matter. While Plaintiff claims that "[d]e facto takings can be described as 'banking' cases in which a land-use-regulatory agency blocks development, 'banking land for acquisition" and that the complaint expressly cited 'banking' cases (Opposition at 18, citing SAP at 46-47, ¶ 139), Plaintiff does not allege that the City has banked land for acquisition. Plaintiff has failed to make clear allegations that would support a de facto property taking claim under federal or state

---

[12] Because Plaintiff insists that it is alleging a de facto taking claim, and not a regulatory taking claim (Opposition at 23), the Court will examine whether Plaintiff has stated a plausible de facto taking claim (as opposed to a plausible regulatory taking claim). As a result, the Court will not address Defendants' arguments regarding the ripeness of Plaintiff's state and federal takings claims (see Motion to Dismiss at 27-31).

law.  Moreover, Plaintiff has failed to allege that the City's actions deprived Plaintiff of all economically viable use of the Banning Point project.

The allegations in the Complaint portion of the SAP are insufficient to state a plausible claim for a de facto taking.  Accordingly, dismissal of Plaintiff's claim for a de facto taking is warranted.

> d.   Declaratory Relief.

The Complaint portion of the SAP alleges a claim for declaratory relief against the City.  (SAP at 48-50, ¶¶ 145-48; see Opposition at 27-28).

The Declaratory Judgment Act states, in pertinent part, that:  "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  A litigant seeking relief under the Declaratory Judgment Act must show there is a real and substantial controversy remediable by specific relief.  See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240-41 (1937); see also Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941) ("Basically, the question  in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.") (citation omitted).

Plaintiff's claim for declaratory relief is deficient for two reasons.  First, Plaintiff has not clearly alleged what declaratory relief is being sought.  Although Plaintiff asserts it "seeks a judicial declaration of the rights and duties of [Plaintiff] and [Defendants] with respect to the claims and contentions alleged in paragraph 99 above" (SAP at 49, ¶ 146), paragraph 99 does not allege claims and/or contentions.  (See SAP at 36, ¶ 99 ["And, as described above, the conduct of the Banning City Councilmembers is governed by the 'Manual of Procedural Guidelines for the

Conduct of City Council and Constituent Body/Commission Meetings for the City
of Banning.'  Banning Municipal Code § 2.04.080."]).  Second, Plaintiff cannot
obtain declaratory relief when it has failed to allege any other plausible claim for
relief.

Since Plaintiff has failed to allege a plausible claim for declaratory relief,
Plaintiff's claim for declaratory relief is subject to dismissal.

### 3.    Leave to Amend the Complaint Portion of the SAP is Granted

At this stage of the litigation, the Court is unable to determine whether
Plaintiff can state plausible claims against Defendants and, therefore, the Court
cannot conclude that amendment of Plaintiff's claims would be futile.  Therefore, in
the interests of justice, Plaintiff is granted another opportunity to cure the above-
noted deficiencies in its pleading with respect to its claims.

## V.

## ORDER

IT IS THEREFORE ORDERED that:  (1) Defendants' Motion  to Dismiss is
GRANTED; (2) Plaintiff's claims in the mandate petition portion of the SAP are
DISMISSED with prejudice and without leave to amend; (3) Plaintiff's claims in the
Complaint portion of the SAP are DISMISSED without prejudice and with leave to
amend; and (4) if Plaintiff still wishes to pursue this action against Defendants,
Plaintiff must file a Third Amended Complaint within thirty (30) days of this Order.

A Third Amended Complaint should bear the case number assigned in this
case, be labeled "Third Amended Complaint," and be complete in and of itself
without reference to any other pleading, attachment, or document.

DATED: December 5, 2025

_____
DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

30